Petitioner, Howard D. Patton, was convicted in the Recorder's Court of the City of Decatur of driving while intoxicated in violation of a city ordinance. He appealed de novo to the circuit court and from an unfavorable jury verdict there, sought review in the Court of Criminal Appeals. The Court of Criminal Appeals affirmed his conviction.
We review only the question of whether the admission into evidence of the result of a test, conducted on a photoelectric intoximeter showing .18% by weight of alcohol in petitioner's blood, was contrary to the Alabama Chemical Test for Intoxication Act. Tit. 36, §§ 154-158, Code of Alabama 1940, Recompiled 1958.
Petitioner asserts that the instant decision of the Court of Criminal Appeals conflicts with that court's prior decision inMyrick v. City of Montgomery, 54 Ala. App. 5, 304 So.2d 247
(1974), cert. denied 293 Ala. 768, 304 So.2d 248 (1974).
We agree and reverse.
Tit. 36, § 155 (a) provides inter alia that "tests authorized
by this chapter . . . shall be admissible as evidence. . . ." (Emphasis supplied). Tit. 36, § 155 (b), states:
 "Chemical analyses of the person's blood, urine, breath to be considered valid under the provisions of this section shall have been performed according to methods approved by the state board of health and by an individual possessing a valid permit issued by the state board of health for this purpose. The state board of health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, to issue permits which shall be subject to termination or revocation at the discretion of the state board of health." (Emphasis supplied).
Thus, the legislature clearly provided that for such test (here, the photoelectric intoximeter or P.E.I.) to be admissible in evidence, it must "have been performed according *Page 323 
to methods approved by the state board of health." Such is a condition precedent to its admissibility. A proper predicate is therefore necessary.
Section 155 (b) is almost identical to Sec. 11-902 (c) of the uniform Vehicle Code. Donigan in his text, Chemical Tests and the Law (2nd ed. 1966), p. 64, states:
 "Thus in order for chemical test evidence to be admissible under such a statute, the proponent must establish first that the particular test method employed in the instant case had been officially approved by the state agency, such as the breathalyzer in a breath test case. . . ."
See State v. Powell, 264 N.C. 73, 140 S.E.2d 705 (1965).
In Myrick, supra, the court held the validity of such tests are conditioned on the performance being under methods approved by the State Board of Health. The court also observed, "Since this section making the analysis admissible is contrary to Common Law it must, particularly in a criminal case, be strictly construed." Ibid. at 6, 304 So.2d at 248.
In the instant case the Court of Criminal Appeals reasoned as follows:
 "Appellant contends that the City failed to prove or that witness Sharp, the operator of the Toximeter, used a device designated by the law enforcement agency, namely the police department of the City. Section (a) Act 699, Vol. II, Special and Regular Sessions, 1969 and 1970, page 1255, provides inter alia, `The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered.' (Blood, breath, or urine).
 "The witness testified on direct that the Decatur Police Department by which he was employed directed him to use the Photo Electric Intoximeter that he used when testing defendant.
 "In support of his objection to the question, supra, defendant further asserts that there is no proof that the methods employed by the witness, a veteran police officer of the City had been approved by the State Board of Health.
 "The witness testified that he had a license, issued by the State Board of Health, to operate the Photo Electric Intoximeter.
. . . . .
 "It appears, supra, that the witness was competent to administer the breath tests on Mr. Patton.
 "The only methods that the witness was authorized to use under his license were the methods which the State Board of Health approved. This license embraced a rebuttable presumption that the licensee, Officer Sharp, in administering the test to defendant, knew and used methods and techniques approved by the State Board of Health."
For a better understanding we have gone to the record:
 "Q. Were you instructed in the methods of operating the instrument at the School in Montgomery?
"A. Yes, I was.
 "Q. Did you follow those methods in administrating [sic] the tests to Mr. Patton on September 7th?
 "MR. ELROD: We object to his testimony of him following the methods, there has been no testimony of any methods approved by the State Board of Health.
 "THE COURT: I'll let the question and answer stay in evidence but I'll require that you go into some detail as to what you mean by methods. It is the State's conclusion I think you should go into these methods, and I'll intertain [sic] a motion to move to exclude later on unless you do clarify the matter."
Later, the testimony continued as set out below:
 "Q. Do you have any written instructions in which you or did you have written instructions which you followed in administering the tests?
 "A. Yes, sir there is a certain procedure that we follow sure [sic] we are getting an accurate reading. This procedure is outlined on a card, operators card *Page 324 
which we follow, exactly and check off as we follow it.
 "Q. Is this operating list in the form of a check list?
"A. Yes, sir.
 "Q. You follow that — is this printed instructions?
"A. Yes, it is.
 "Q. I hold in my hand a Photo Electric Intoximeter record is that a copy of the printed instructions?
"A. Yes, sir, this is one.
 "Q. Which was in use at the time — who provided these instructions to you?
"A. You mean the instructions on the card?
"Q. Yes, sir.
 "A. I don't know for sure whether it is the Decatur Police Department or by the Department of Public Health, but they are the procedures set forth on the operation of the instrument.
 "Q. You are provided these by the Decatur Police Department?
"A. Yes, sir.
 "Q. Did you follow the instructions on one of these cards —
 "MR. ELROD: We object to him following instructions because there is no testimony that he followed the instructions nor has it been shown the written approval of the State of Alabama or the Department of Public Health.
"THE COURT: Overruled."
Nowhere is it shown that duly adopted methods or regulations of the State Board of Health were followed in administering the test. The trial court therefore had before it no certified methods promulgated by the Board of Health for the administration of the test and consequently was unable to ascertain standards against which the evidence could be measured.
While it is unnecessary for the prosecution to resort to the P.E.I. test in order to make a prima facie case [Broxton v.State, 27 Ala. App. 298, 171 So. 390 (1936); McMurry v. State,28 Ala. App. 253, 184 So. 42 (1938)], the results of the test, which we hold were inadmissible, were highly prejudicial.
Our decision in the instant case does not stand for a proposition that every legislative delegation of power gives rise to a mandatory duty to promulgate administrative standards in order for that power to be validly exercised. But our inability here to ascertain the validity of the results obtained from a technologically sophisticated device due to questionable operator technique, demonstrates the absolute necessity for written procedural methods governing its use. In this regard, unwritten standards of the Board of Health are no better than no standards at all. See Sun Ray Drive-In Dairy,Inc. v. Oregon Liquor Control Comm., 16 Or. App. 63,517 P.2d 289 (1973). The need for written standards becomes particularly acute where, as here, a finding of criminal conduct may well turn upon adherence to and rigid compliance with such standards.
Our decision, moreover, is not to be construed as a rejection of results of the photoelectric Intoximeter when introduced as evidence against persons charged with driving while under the influence of intoxicating liquor. Although intoxication levels obtained from the P.E.I. and similar blood alcohol content measuring devices have been fraught with evidentiary challenges as to their probative value in criminal proceedings; see Statev. Bessette, 130 Vt. 438, 296 A.2d 179 (1972); we have been willing to accept these results and statutory presumptions which attach therefrom where the record is devoid of matters which substantially draw into doubt their accuracy. Rivers v.Black, 259 Ala. 528, 68 So.2d 2 (1953); Bonner v. State,52 Ala. App. 346, 292 So.2d 460 (1974). Furthermore, the legislature has declared that the results of P.E.I. tests "shall be admissible as evidence." Tit. 36, § 155 (a), supra. Accordingly, in passing on a conviction which was based in part on the results of a P.E.I. test, the only concern of this court is to ascertain whether the will of *Page 325 
the legislature has been obeyed.[1] We hold that an affirmative response to that inquiry cannot follow where there are no written standards governing the manner in which P.E.I. tests are to be performed by state law enforcement agencies.
It would be a simple matter to profer a duly certified and authenticated copy of methods or regulations duly adopted or approved by the State Board of Health. When such copy is admitted in evidence, then the proponent could ask the witness predicatory questions.
The judgment of the Court of Criminal Appeals is reversed and the cause is remanded.
REVERSED AND REMANDED.
HEFLIN, C.J., and BLOODWORTH, MADDOX, FAULKNER, JONES, SHORES, and BEATTY, JJ., concur.
[1] When the legislature declares that certain evidence is admissible, the courts are bound by that declaration. This rule prevails until the admission of that evidence runs afoul of the state or federal constitutions. Evidence can be so unreliable and inconclusive as to violate due process of law. Flurry v.State, 52 Ala. App. 64, 289 So.2d 632 (1973); United States v.Fay, 284 F.2d 426 (2 Cir., 1960); Blackburn v. State ofAlabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).