358 So.2d 1050 (1977)
Charles William ESTES
v.
STATE.
1 Div. 769.
Court of Criminal Appeals of Alabama.
December 6, 1977.[*]
On Rehearing January 24, 1978.
Rehearing Denied February 21, 1978.
*1051 James D. Sullivan, Mobile, for appellant.
William J. Baxley, Atty. Gen., and John B. Rucker, III, Asst. Atty. Gen., for the State; James S. Ward, Asst. Atty. Gen., on application for rehearing.
TYSON, Presiding Judge.
Charles William Estes was indicted for the first degree murder of one Felicia Thompson by running a motor vehicle over, or into, the said Felicia Thompson, resulting in her death. The jury's verdict was guilty of murder in the second degree and punishment was set at fifteen years imprisonment. The trial court set sentence accordingly.
On the evening of September 13, 1975, at approximately 7:00 o'clock, Charles William Estes struck and killed Felicia Thompson, a five year old girl, while driving his automobile. A woman who was present when the accident occurred and the police officers who investigated the accident testified that Estes was intoxicated when he ran over the child. A Photoelectric Intoximeter Test administered to Estes some two hours after the accident revealed the alcoholic content of his blood to be 0.27 percent.

I
The dispositive issue on this appeal is whether the State laid a proper predicate for admitting into evidence the results of the Photoelectric Intoximeter Test. We find the proper predicate was not laid and we reverse.
Title 36, Section 155(b), Code of Alabama 1940 (Recompiled 1958, Supplement 1973), the statute in effect at the time of the accident and the trial, sets forth two requirements necessary to establish the validity and admissibility of a chemical analysis *1052 test under the Alabama Chemical Test for Intoxication Act. The test must be performed (1) "by an individual possessing a valid permit issued by the state board of health for this purpose" and (2) "according to methods approved by the state board of health." It is mandatory that these two requirements be met before results of the test are admissible in a criminal case. Myrick v. City of Montgomery, 54 Ala.App. 5, 304 So.2d 247, cert, denied 293 Ala. 768, 304 So.2d 248.
In the case at bar the appellant's attorney objected to the introduction at trial of the Photoelectric Intoximeter Test, saying that the proper predicate had not been laid before the introduction into evidence of the results (R. pp. 126-127). The State then proceeded to show that insofar as the State Board of Health was concerned the methods and regulations duly adopted by said Board were presented and admitted based upon a certification from Dr. Ira Myers, State Health Officer. This was proper. Patton v. City of Decatur, Ala., 337 So.2d 321; Weaver v. City of Birmingham, Ala.Cr. App., 340 So.2d 99.
A proper predicate, however, also requires that the officer administering the Photoelectric Intoximeter Test testify that he, too, has been duly authorized and licensed to administer such test, and also that the machine on which such test is to be given has been properly examined and found to be in good working order. Myrick v. City of Montgomery, 54 Ala.App. 5, 304 So.2d 247, cert, denied 293 Ala. 768, 304 So.2d 248; Weaver v. City of Birmingham, Ala.Cr.App., 340 So.2d 99; Pugh v. State, Ala.Cr.App., 343 So.2d 793, cert, denied, Ex parte State ex rel. Attorney General, Ala., 343 So.2d 795; Patton v. City of Decatur, supra.
The problem which confronts us and necessitates a reversal of this case is the fact that, while the officer who administered the test, Sergeant Carroll R. Mason, did testify that he had a license from the State Board of Health to administer such test and had a check list which he followed in administering the test in the case at bar, and that the appellant had agreed to take such test, nowhere in the record does it appear that the City of Mobile had adopted by ordinance that the Photoelectric Intoximeter Test is the method to be used by the City in such cases, nor is there any reference to an ordinance which may have been adopted for this purpose. In failing to meet this requirement in this case, reversible error results. Myrick v. City of Montgomery, supra; Weaver v. City of Birmingham, supra; Pugh v. State, supra.
A careful review of the record, including Sergeant Mason's testimony, shows that the predicate in the case at bar is deficient for the reasons set forth above (R. pp. 127-140).
It is mandatory that the proponent offering the results of the chemical test establish that the particular test method used has been officially approved and adopted by officials of the law enforcement agency which administered the test in question. Authorities herein cited.
For the error shown, we reverse and remand this cause. In light of our decision as herein outlined we pretermit discussion of other issues raised in this appeal. We note for the information of the court below, however, the decision of the Supreme Court of Alabama in Langford v. State, Ala., 354 So.2d 313, 1977.
REVERSED AND REMANDED.
All the Judges concur.

ON REHEARING
BOWEN, Judge.
The original judgment entered by this court on December 6, 1977, is set aside and the following becomes the opinion of this court. It is the opinion of the majority of the court that the admission into evidence of the results of the Photoelectric Intoximeter Test is not grounds for reversal of the judgment of the trial court.
The appellant's conviction was reversed because the state allegedly failed to lay a proper predicate for the introduction of the PEI test.

*1053 ". . . nowhere in the record does it appear that the City of Mobile had adopted by ordinance that the Photoelectric Intoximeter Test is the method to be used by the City in such cases, nor is there any reference to an ordinance which may have been adopted for this purpose. In failing to meet this requirement in this case, reversible error results. Myrick v. City of Montgomery, supra; Weaver v. City of Birmingham, supra; Pugh v. State, supra." (Emphasis added) Estes v. State, p. 1052.
However a city ordinance is not an essential element of a proper predicate for the introduction of the PEI test as a following paragraph in that same opinion makes clear.
"It is mandatory that the proponent offering the results of the chemical test establish that the particular test method used has been officially approved and adopted by officials of the law enforcement agency which administered the test in question. Authorities herein cited." Estes, supra, p. 1052. (Emphasis added)
This is a correct statement of the law.
Myrick v. City of Montgomery, 54 Ala. App. 5, 304 So.2d 247, cert, denied, 293 Ala. 768, 304 So.2d 248 (1974), was the first case in Alabama to state the necessary predicate for the introduction of the results of a PEI test under the Alabama Chemical Test for Intoxication Act, No. 699 of September 11, 1969, codified as Title 36, §§ 154-158, Code of Alabama 1940, Recompiled 1958, 1973 Cumulative Pocket Part now §§ 32-5-190 194, Code of Alabama 1975.
"Since this section making the analysis admissible is contrary to Common Law it must, particularly in a criminal case, be strictly construed. Hence, it was incumbent on the City to show:
(1) which test it had designated for its approved officers to administer (§ 1(a) of said Act, 3rd sent.); and
(2) that the test and the operator have been approved as required by § 2(b)."
Myrick, 54 Ala.App. at 6, 304 So.2d at 248.
Myrick contains no mention of any city ordinance and would be in obvious conflict with "§ 1(a) of said Act, 3rd sent." if it did.[1] That sentence states:
"The law-enforcement agency by which such officer (who administers the test) is employed shall designate which of the aforesaid tests shall be administered."
The Act authorizing the introduction of the test results does not require the State or City (in a municipal prosecution) to prove which test the city had adopted by reference to a city ordinance. The Act clearly and specifically states that it is the law enforcement agency, not the city, which designates which test is to be used.
Thus that portion of our original opinion requiring a city ordinance as an essential element of the predicate for the admission of the results of a PEI test is at best misleading; at worst, an incorrect statement of the law. For these same reasons the same statement in Weaver v. City of Birmingham, Ala.Cr.App., 340 So.2d 99 (1976), is also incorrect.[2]
Since a city ordinance is not required to demonstrate or prove which test the law enforcement agency designated for use, such information could be supplied by any officer who would be in a position to know which test was authorized, e. g. among others, the officer who administered the test or a superior officer who authorized or designated the test to be administered. This was done in Patton v. City of Decatur, Ala.Cr.App., 337 So.2d 173, 176, reversed on *1054 the grounds that the state failed to introduce a copy of the regulations approved by the State Board of Health for the administration of the Photoelectric Intoximeter Test, Ala., 337 So.2d 177 (1976).
Admittedly there was no testimony specifically stating which test the Mobile Police Department had authorized. Yet a reading of the testimony of Sergeant Carroll R. Mason, the test operator, can leave no doubt as to which test was, in fact, designated and authorized. In this regard, Sergeant Mason testified that he had been operating the PEI test "ever since they first started; its been I'd say eight or ten years;" that in that time he had given well over a thousand tests; that he was sent to the Police Academy in Montgomery for training; that he was licensed by the State Board of Health; and that he followed a check list and the rules of the State Board of Health in administering the test. In our opinion this was a sufficient compliance with the Alabama Chemical Test for Intoxication Act to constitute a proper, if not formal, predicate for the admission of the test results.
However even if the test results were improperly admitted because of the lack of a formal predicate, the conviction is still due to be affirmed. The admission of evidence apparently illegal may be rendered prejudicially innocuous by subsequent legal testimony to the same effect or from which the same facts can be inferred. Yelton v. State, 294 Ala. 340, 317 So.2d 331 (1974); 7 Alabama Digest, Criminal Law. The ultimate fact to be inferred here is intoxication or drunkenness. Before the results of the PEI test were admitted there was a staggering and overwhelming amount of evidence that the appellant was drunk and highly intoxicated. It is not error to allow facts to be shown over objection when they have; already been proved without objection. Bush v. State, 282 Ala. 134,209 So.2d 416 (1968). Though Patton v. City of Decatur, Ala., 337 So.2d 321 at 324 (1976), held that the results of a PEI test are prejudicial, it is not binding in this instance because in Patton there was no independent proof of intoxication apart from the test itself.
In Holloway v. City of Birmingham, 56 Ala.App. 545, 323 So.2d 726 (1975), this court refused to even consider the assertion of the defendant that the city failed to lay a proper predicate prior to the admission of an intoximeter test because the court was firmly of the opinion that the defendant's intoxicated condition at the time of the accident was fully proved by the testimony of two police officers who observed the accident and talked to the defendant immediately afterward. In Weaver v. City of Birmingham, Ala.Cr.App., 340 So.2d 99, 102 (1976), this court rejected this position under the particular facts because the evidence of intoxication was not as strong. However in this case the evidence of intoxication is so extensive and comprehensive that any other conclusion requires a forced and strained construction, if not utter disregard of the facts. Moreover, the summary rejection of the reasoning exercised in Holloway renders that case a legal anomaly and raises serious questions about the absence of continuity in the application of legal doctrine by this court.
The facts belie the assertion that the PEI test results were prejudicial to the appellant. Mr. and Mrs. Patterson testified that they closely observed the appellant driving his automobile immediately prior to the homicide. According to Mr. Patterson, the appellant's automobile was swerving all over the road and ran off both the left and right sides of the road. The appellant ran at least ten or twelve cars off the road and made them go off the other side of the road. Mr. Patterson stated that he could "distinguish very well" that "something was wrong" and it looked like the car was "going to get in a wreck or something". The appellant's driving was so bad that the Pattersons wrote down his license tag number so that they could notify the police.
Mrs. Elizabeth Baldwin testified that she was within a foot of Felicia Thompson when the child was run over and crushed by the appellant's automobile. She observed the appellant immediately after he got out *1055 of his car following the homicide and talked with him. She stated that she saw a drunk man
"that was drunker than anybody I'd ever seen before in my life. He was in a total stupor; he didn't even know that he had killed the child. His eyes was not in focus; he was just completely blank. He said, `What happened?' He didn't know what happened."
Officer Ernest Busby of the Mobile Police Department testified that when he arrived at the scene of the accident some ten minutes after receiving the accident report, he talked with the appellant. Officer Busby stated that the appellant's "speech was slurred; his eyes were real bloodshot; and he had a strong smell of alcohol about his person". Based upon his experience as a police officer and having seen a "couple of hundred" intoxicated persons, Officer Busby stated that the appellant was intoxicated. In conducting an inventory of the appellant's automobile at the scene of the homicide, Officer Busby found a full pint of whiskey under the front seat and an almost empty bottle on the front seat.
Reserve Officer Norman V. Rickles of the Mobile Police Department was Officer Busby's partner. He testified that the appellant required physical support and could not stand up; that the appellant was staggering and had to be steadied; that the appellant first dropped his wallet and then could only find his driver's license after several "look-throughs" of the wallet. When Officer Rickles asked the appellant for his address, the appellant gave him two or three different addresses before giving the correct one. The appellant was slow in answering questions and was in a stupor: "He didn't act like he could grasp what was going on." Officer Rickles testified that the appellant looked like he was drunk.
Officer David R. Harvard of the Mobile Police Department arrived at the scene and transported the appellant to the Mobile Police Department. Officer Harvard testified that the appellant staggered and that based upon his experience and past observation of intoxicated persons, the appellant "was one of the drunkest drivers I've ever seen". Harvard stated that although he may have handled some persons drunker than the appellant, "none were driving a vehicle I don't believe". Between the time Officer Harvard first observed the appellant until he was placed in the docket room at Mobile City Police Headquarters, the appellant
"was glassy eyed; there was a strong odor of alcohol about his person; his speech was slurred; he would make partially incoherent statements; he would begin a sentence and cut it off; very unsteady on his feet, Officer Rickles and I both had to help him or assist him to my patrol unit and place him in the back seat; he was very unsteady on his feet; after he got in the police car he slouched down in the seat several times on the way to townI thought that he would go to sleep, I was watching him in my rear view mirror, and he would nod his head like he was dozing, and he would doze off."
The appellant told Officer Harvard that he had had a few drinks but wasn't drunk.
Sergeant Robert Moore of the Mobile Police Department was also at the scene and testified that the appellant was drunk. Approximately two hours after the homicide, the appellant was still thick tongued and had a strong odor of alcohol about his person.
Officer Mason who administered the PEI test to the appellant testified that the appellant seemed intoxicated and:
". . . kept asking be how the little girl was, and he told me he was perfectly willing to take the test and he knew he was drunk, and that was about the limit of the conversation."
All of this testimony, except that of Mr. and Mrs. Patterson which was introduced by the state on rebuttal, was given before the results of the PEI test were admitted. In our opinion the abundance of this evidence that the appellant was drunk and highly intoxicated renders the results of the PEI test innocuous and inoffensive. Any legal presumption of intoxication arising from the test was insignificant in view of *1056 the testimony by the actual observers of the appellant's condition.
The PEI test was performed in the proper manner by a qualified operator. There is no issue of operator technique or faulty mechanical condition of any machine. The state proved that both the test and operator were approved by the State Board of Health and introduced a duly certified and authenticated copy of the methods and regulations adopted and approved by the State Board of Health governing the performance of the test Under § 32-5-193(b) this was sufficient to validate the test.[3] It should be sufficient to authorize its introduction into evidence. Even if not, the admission of the test results should not constitute grounds for reversal in view of the testimony presented.
The result and rule advocated by the original opinion in this cause reduces any function of appellate review to a computer formula of rigid and mechanical interpretation. It reveals a preoccupation with form instead of substance allowing the scales of justice to rust and collect dust. For these reasons we withdraw our concurrences in the original opinion and vote to affirm the judgment of the trial court.
APPLICATION GRANTED; Judgment of reversal set aside. Original opinion becomes a dissenting opinion.
AFFIRMED.
HARRIS, P. J., and DeCARLO and BOOKOUT, JJ., concur.
TYSON, J., dissents.
TYSON, Judge, dissenting.
I adhere to the views as expressed by me in behalf of a then majority of this Court on original deliverance on December 6, 1977, in this cause.

I
Because a majority of this Court has now declined to follow the clear mandate of Myrick v. City of Montgomery, 54 Ala.App. 5, 304 So.2d 247, cert, denied 293 Ala. 768, 304 So.2d 248, as further defined in subsequent opinions such as Patton v. City of Decatur, Ala., 337 So.2d 321; Weaver v. City of Birmingham, Ala.Cr.App., 340 So.2d 99; and Pugh v. State, Ala.Cr.App., 343 So.2d 793, cert, denied Ex parte State ex rel. Attorney General, Ala., 343 So.2d 795, I feel required to also note the following:
". . . [I]t was incumbent on the City [State] to show:
"(1) which test it had designated for its approved officers to administer (§ 1(a) of said Act, 3rd sent.); and
"(2) that the test and the operator have been approved as required by § 2(b)."
The record in this cause wholly fails to set forth any language by the officer administering the test, Sgt. Carroll R. Mason, or other city official, that the Photoelectric Intoximeter had been examined and found to be in good working order. No date is given for any examination of the machine. Nor does the predicate in this case indicate an adoption by the City of Mobile of the Photoelectric Intoximeter as the method to be used by the city for this purpose.
The lesson in Myrick v. City of Montgomery, supra, indicates that a city ordinance is the proper method for this purpose.[1] This *1057 was specifically noted by this Court in Weaver v. City of Birmingham, supra.
Even though, as here, there be other evidence of the appellant's alleged intoxicated condition, a failure to lay a proper predicate, such as in the case at bar has heretofore required reversal of such a case. Weaver v. City of Birmingham, supra; Patton v. City of Decatur, supra; and Pugh v. State, supra.
The failure of the majority of this Court to recognize the necessity of protecting individual rights when approving the use of test results of a machine is disturbing. The burden of proof is always on the prosecution. This necessarily requires that a proper predicate be laid in presenting the evidence for the prosecution.
The laying of a correct legal predicate before the admission of certain types of evidence is no stranger to the criminal law. Clearly, settled law requires the presentment of a proper voluntariness predicate, Duncan v. State, 278 Ala. 145, 176 So.2d 840, as well as a "Miranda" predicate, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, before a defendant's alleged confession may be admitted into evidence.
Similarly, close scrutiny is required of the details constituting the information upon which a search warrant is issued, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, before the fruits of such search may be admitted.
Likewise, a state trial court, before the acceptance of a guilty plea, must make a proper inquiry as to the voluntariness of such plea under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.
Surely, where the results of a machine, fed by human input, are concerned, no less a constitutional safeguard should be required.
Hopefully, we have not regressed to trial by computer.
In this era of processing or recording human behavior or conduct through mechanical, electronic, or other such devices, certain basic protections must be maintained. This is the clear lesson of the past decisions of this Court and the Supreme Court of Alabama. Such, in my judgment, has not been here observed, nor precedent followed.

II
It is equally disturbing to me that a majority of my brothers would now vote to affirm this case in light of the opinion of the Supreme Court of Alabama in Langford v. State, 354 So.2d 313, 1977, rehearing overruled Jan. 6, 1978.
Estes, the appellant, was indicted for the first degree murder of one Felicia Thompson. The evidence offered on trial was intended to establish conduct "evidencing a depraved mind regardless of human life." See Title 14, Section 314, Code of Alabama 1940.
The jury was charged under the evidence presented and the aforesaid statute. While the verdict of the jury was guilty of murder in the second degree, I am of the opinion that reversible error also resulted.
NOTES
[*] Editor's note: The original judgment entered by this court on December 6, 1977, is set aside and the opinion of Jan.24,1978 become the opinion of this court.
[1] An explanation for the misinterpretation of the actual holding in Myrick may result from the use of the word "City" in that opinion. In Myrick the accused was tried and convicted under a city ordinance. As used in that opinion, "City" refers to the prosecuting authority as distinguished from the municipal entity.
[2] "We deem it also appropriate to here point out that there is no proof in this record as to which `test' the City of Birmingham has adopted as its method to be used in such cases, nor is there any reference to a Birmingham City Ordinance which may have been adopted for such test. Myrick v. Montgomery, supra, makes this an absolute requirement." Weaver, supra, at 340 So.2d 101.
[3] Section 32-5-193(b) reads:

"(b) Chemical analyses of the person's blood, urine or breath to be considered valid under the provisions of this section shall have been performed according to methods approved by the state board of health and by an individual possessing a valid permit issued by the state board of health for this purpose. The state board of health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state board of health."
[1] Without a proper city ordinance, designating a particular device or machine as the proper method to be used under Title 36, Section 155, Code of Alabama 1940, as amended 1969, how is any individual, be he or she layman, lawyer, or judge, to know which standard or method is to be used in evaluating such person's conduct or condition?