John Y. Delarosa was charged by a two count indictment with the offense of murder in the second degree. Count one charged that he "unlawfully, and with malice aforethought," committed vehicular homicide against Charles Allison McMurray and Christopher Lee McMurray. Count two averred the same killing with the additional charge that the appellant was operating his motor vehicle while intoxicated. A jury found the appellant "guilty of Manslaughter in the First Degree and fix[ed] his punishment at imprisonment in the penitentiary for a term of one year. . . ." The trial court correctly amended the verdict by sentencing the appellant to one year in the *Page 877 
county jail instead of one year in the penitentiary. Ala. Code §15-18-1 (1975).
This case grew out of a horrible automobile accident that took the lives of seven year old Charles McMurray and three year old Christopher McMurray. The evidence presented by the State revealed that the appellant met some co-workers after work for a "couple" of drinks at the Maxwell AFB Non-Commissioned Officers (NCO) Club on the afternoon of May 25, 1979. From approximately 4:30 p.m. until approximately 11:15 p.m. the appellant consumed two regular beers with some chicken and snacks at the NCO Club, two small Miller beers at co-worker Ricky Loudermelt's apartment, and two bourbon and cokes at the Diplomat Inn lounge.
At approximately 11:15 p.m. the appellant left the Diplomat Inn driving his orange van down Highway 331 South to his residence at Highland Home, Alabama. Approximately six miles north of Ada, Alabama, the appellant passed, in a legal passing zone, an automobile driven by Gary Crow. Mr. Crow testified that the appellant stayed in the northbound lane too long because he was approaching the top of a hill before pulling back into the southbound lane. Highway 331 in this area is a curvy, hilly, two lane highway. Mr. Crow, whose automobile was set on cruise control at between fifty-five and sixty miles per hour, estimated the appellant's speed at sixty-five to seventy miles per hour. The appellant's van pulled away from Mr. Crow's automobile and was out of sight within a few minutes.
Approximately six to ten minutes after passing Mr. Crow the appellant's van collided with an automobile driven by Mrs. Sandra McMurray near the intersection of Highways 94 and 331 in front of an Amoco filling station. According to the testimony of Mrs. McMurray she first saw the appellant's van "quite a ways" up the highway on her side of the road (northbound lane) coming toward her. She made a decision to get in the left lane (southbound) thinking the van would pass her on the right side and attempted to call on her CB radio to warn traffic behind her. Mrs. McMurray swerved to the left at the last second. She does not remember the impact because she blacked out.
Alabama State Trooper Corporal James E. Nelson, Trooper Timothy G. Hardy, and Emergency Medical Technician Dean Mack all testified they detected the odor of alcoholic beverages on the appellant. Corporal Nelson stated he did not detect any odor of alcohol on Mrs. McMurray. Although Trooper Hardy had an Alcosensor in his trooper car that is used to conduct field tests for intoxication neither he nor Corporal Nelson utilized the device. Corporal Nelson testified that no arrest was made at the scene of the accident.
Dr. Jesse William Austin, Jr. testified that both McMurray boys were dead on arrival at Jackson Hospital in Montgomery. Dr. Austin also examined the appellant at approximately 12:30 or 1:00 a.m. on May 26, 1979. He stated the appellant had suffered a head injury that was "[n]ot really severe, but enough . . . for some observation." The appellant was conscious during the examination. Dr. Austin did not remember any alcohol odor about the appellant and entered nothing on the emergency room admission sheet concerning alcohol. He authorized registered nurse Nina Green to extract blood from the appellant for routine lab work.
Dr. Austin also conferred with Dr. Franklin Caswell Miles, a neurosurgeon, concerning the appellant's injury. Dr. Miles' examination of the appellant concluded that he was neurologically intact.
While at the scene of the accident Corporal Nelson directed Trooper Raymond Dawson Smith to go to Jackson Hospital and obtain a specimen of blood from the appellant to determine his blood alcohol level. At approximately 1:00 a.m. on May 26, 1979, nurse Nina Green extracted a blood sample from the appellant with his consent and turned the sample over to Trooper Smith. This extraction of blood was in addition to the one authorized by Dr. Austin. *Page 878 
After the proper chain of custody was testified to, Criminalist Allen Adair, a drug identification and blood alcohol analysis expert with the Alabama Department of Forensic Sciences, testified that his analysis of the appellant's blood sample revealed a blood alcohol level of .22 grams percent by weight of ethyl alcohol.
Toxicologist Richard Roper, supervisor of the Montgomery Regional Laboratory of the Department of Forensic Sciences, testified that a person's driving ability would be severely impaired with a blood alcohol level of .22.
The State rested its case at this point and the appellant's motion to exclude the evidence was overruled by the trial court. The appellant took the witness stand and denied that he was intoxicated during the time in question. He testified that he was driving in the wrong lane immediately prior to the accident in order to avoid hitting an automobile protruding onto the highway from the Twilight lounge parking lot up the road from the scene of the accident. Once in the wrong lane he was blinded by the bright lights of the oncoming vehicle. When he started getting back into his lane of traffic the crash occurred and he was knocked unconscious. The appellant also testified he was only going sixty miles per hour when he passed Mr. Crow.
The appellant testified he was coming in and out of consciousness at the hospital and does not recall much of the conversation with nurse Green.
Judith Duncan Delarosa, wife of the appellant, testified that at approximately 5:30 or 6:00 a.m. on May 26, 1979, she detected a light odor of alcohol on her husband in the hospital. She stated that State Troopers came to see the appellant at the hospital for the next two days but never put him under arrest.
 I
The appellant contends the taking of his blood sample for purposes of blood alcohol level analysis violated his Constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. More specifically he contends that his consent to the extraction of the blood was not a knowing, intelligent, and understanding consent.
At the outset we will state that the Fifth Amendment question has no merit. The United States Supreme Court in Schmerber v.California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), has specifically held that the extraction of blood for purposes of chemical analysis does not violate the self-incrimination privilege.
Schmerber also stated that "if compulsory administration of a blood test does not implicate the Fifth Amendment, it plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment." 384 U.S. at 767, 86 S.Ct. at 1834. But it is well settled that a search conducted pursuant to consent is one of the "`few specifically established and well-delineated exceptions'" to the privilege against unreasonable searches and seizures. Schneckloth v. Bustamonte,412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858
(1973). In order to justify the search of a suspect not in custody on the basis of his consent it must be demonstrated that the consent was voluntarily given. "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Schneckloth,412 U.S. at 248-249, 93 S.Ct. at 2059.
There is no evidence to indicate that appellant was in custody of law enforcement authorities at the time of the blood extraction. He was not under arrest at the time and was not arrested for this offense until approximately two weeks later.
The trial court considered testimony given both in and out of the jury's presence before reaching a determination that appellant's consent was voluntary. The following is the trial court's ruling on this point: *Page 879 
 "THE COURT: Gentlemen, I am ready to rule, but I am going to make a record for you, Mr. Lewery.
 I find these to be the facts relevant to the determination in this case: The Defendant was injured in the accident, and the injury apparently had some severity in that he had a fracture of some facial bones. Specifically, sinus and as otherwise described by Dr. Miles. I further find that under Dr. Austin's testimony the severity of that injury, as per Dr. Austin's testimony, was 3.5 on a 10 point scale of severity.
 The third fact I will consider is the testimony of the Trooper that the Defendant was addled and confused at the scene. I will further consider the fact that no drugs were administered to the Defendant that night. I will further consider the fact that the Defendant was admitted to the hospital for observation. I will further consider the fact that the Defendant was responsive upon admission to the Emergency Room. I will further consider the fact that the Defendant talked to Nurse Green and gave his consent. I would further consider the fact that the Defendant gave his correct phone number to Mrs. Green. I will further consider the fact that Nurse Green said the Defendant told her his name. I will consider the Defendant's testimony that he did not give any consent to the best of his knowledge. That he doesn't remember all of the blood taking. The Defendant testified that he was semi-conscious, that he remembers some of Nurse Green's remarks, that he remembers a needle being — or the puncture, the taking of the blood. He remembers some of the blood taking. I will consider the fact that the Defendant was not advised of his Constitutional rights and was not advised that he could refuse. I will consider the fact that the Defendant's pupils were normal upon examination by Dr. Miles at seven forty five in the morning. I will consider Dr. Miles' testimony that a blow of that magnitude would be expected to cause unconsciousness, but it would be also quite possible that he would have regained consciousness and could have been responsive.
 Based on the totality of the circumstances in this case, I am going to find then that the consent was voluntarily given.
 And you have got your objection to the Court's ruling.
MR. LOWERY: Yes, sir." (R.p. 181-183)
". . . .
"THE COURT: All right.
I will put something else in the Record for you.
 Another fact of consideration was that Trooper Smith testified that the Defendant responded to Mrs. Green, but he did not respond to the Trooper." (R.p. 184)
As can be seen from the trial court's ruling the evidence on the issue of consent was conflicting. "Our official approach to questions for review is appellate only, a fact well known by the legal profession. Our review cannot be based solely on the fact that we find the evidence in conflict. Neither can we pass judgment on its possible truthfulness or falsity." Fagan v.State, 35 Ala. App. 13, 44 So.2d 634, cert. den., 253 Ala. 444,44 So.2d 638 (1949). In our review of the record we can find no evidence of duress or coercion. Based on the above authorities we find no reversible error in this case concerning the extraction and analysis of the appellant's blood. See also,Hill v. State, Ala.Cr.App., 366 So.2d 296 (1978), affirmed, Ala., 366 So.2d 318 (1979).
 II
The appellant next contends the State failed to lay a proper predicate for introduction into evidence of the results of a blood alcohol analysis on appellant's blood sample as required by Patton v. City of Decatur, 337 So.2d 321 (Ala. 1976). He contends no "certified methods promulgated by the Board of Health for the administration of the [blood] test" were before the trial court as required by Patton. 337 So.2d at 324.
During direct examination of Criminalist Allen Adair by the State the following occurred: *Page 880 
 "Q Can you tell us, in regards to the blood alcohol level, what your analysis revealed?
A Yes, Sir.
 MR. LOWERY (Defense attorney): Now, we object to that, and would move to suppress any report or any test on the grounds that it would violate the constitutional rights of this Defendant as the evidence has developed in this case, and the fourth, fifth and fourteenth amendments to the Constitution.
 And I would like to be heard on the law, if the Court please." (R.p. 152-153)
Immediately after this objection the jury was removed from the courtroom. After several witnesses testified, one in the presence of the jury, the court issued a ruling that the consent of the appellant to the extraction of the blood was voluntary. Later, Mr. Adair was recalled to the witness stand and the following occurred:
Direct examination by the State:
 "Q And we stopped when you were fixing to testify as to whether or not you had an occasion to perform analysis on this blood sample to determine the alcoholic content of it. Have you, sir, had an occasion to perform analysis on this blood sample to determine the alcoholic content of it?
A Yes, sir.
 Q Would you tell the ladies and gentlemen of the Jury, please, sir, what the blood alcohol level in this sample that you analyzed was, sir?
 MR. LOWERY: Note our objection. Same grounds as stated in our Motion to Suppress.
THE COURT: All right. Overruled.
 A Yes, sir. The blood alcohol level was .22 grams percent by weight of ethyl alcohol.
MR. LOWERY: We move to exclude the answer.
THE COURT: Deny your Motion.
MR. LOWERY: We move for a mistrial.
THE COURT: Deny your Motion."
(R.p. 190)
We have searched the record and are unable to find any objection by the appellant or ruling by the trial court concerning the laying of a proper predicate for introduction of the results of the blood analysis. The only objection appellant has given concerns the constitutional rights that we spoke to in part I of this opinion. On appeal this court confines its decisions to grounds of objection specified, those grounds omitted are deemed to have been waived. Pope v. State,39 Ala. App. 42, 96 So.2d 441, cert. den., 266 Ala. 699,96 So.2d 447 (1957). Review on appeal is limited to matters ruled on at trial. Frazier v. State, 53 Ala. App. 492, 301 So.2d 256 (1974).
We have carefully examined the record in this cause and find same to be free of error. This case is due to be and is hereby affirmed. Cf., Commander v. State, Ala.Cr.App., 374 So.2d 910
(1978), cert. quashed, Ala., 374 So.2d 921 (1979).
AFFIRMED.
All the Judges concur.