Second degree murder; sentence: imprisonment for ten years and one day.
On the afternoon of September 1, 1979, the appellant was driving his truck on East Maple Street in Scottsboro, Alabama. Charlie McCamey was a passenger in the truck. As they approached an area of East Maple Street in front of the residence of James Cothron and Annie Ruth Moore, the truck swerved off the right side of the street, cut down a fire hydrant, and ran over two young boys who were playing on the grassy shoulder of the street. Eight-year-old Tony Wellington died as a result of this accident.
Scottsboro Police Officer John Childress arrested the appellant at the scene of the accident and charged him with driving while intoxicated. Officer Childress testified that the appellant's speech was slurred and he smelled of alcoholic beverages. The appellant was staggering, and Officer Childress had to assist him in walking. Officer Childress gave his experienced opinion that the appellant was intoxicated at the time of the accident. There were no alcoholic beverages found in the truck.
Officer Jack Ledwell also saw the appellant at the scene of the accident. The appellant was weaving and unsteady on his feet. He could not walk straight. Officer Ledwell observed no injuries about the person of the appellant, but he did smell the odor of alcohol. Officer Ledwell testified that based on his experience the appellant was intoxicated.
After the appellant was transported to City Hall, Officer Ledwell administered a photoelectric intoximeter (PEI) test to him. This test measures the alcohol content of a person's blood. The result of the test was .22 percent by weight of alcohol in appellant's blood. Section 32-5-193 (a)(3), Code of Ala. 1975, provides: "If there was at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor." The trial court instructed the jury as to that rebuttable presumption in the court's oral charge.
Scottsboro Police Captain Keith Smith testified that he questioned the appellant at police headquarters after advising him of his constitutional rights. The appellant stated he was driving the truck and had "had a couple of beers."
 I
The appellant claims the trial court committed reversible error in denying his motion to produce certain written statements taken from two eyewitnesses by police officers.
On direct examination the testimony of State's witness James Cothron revealed an eyewitness account of the events leading to the charge on which the appellant was convicted. On cross-examination Mr. Cothron stated he gave Officer Jack Ledwell a written statement. The appellant's attorney then requested production of this witness's statement for purposes of cross-examination. The trial court denied the request.
The testimony of State's witness Annie Ruth Moore was similar to that of Mr. Cothron. She also testified on cross-examination that she gave a written statement to a police officer. The appellant's motion to produce was again denied.
In the case of Cooks v. State, 50 Ala. App. 49, 276 So.2d 634, cert. denied, 290 Ala. 363, 276 So.2d 640 (1973), the following is stated:
 "The first requisite necessary to secure for inspection production of a statement' of a witness for use on cross examination of the witness is that the statement must be one in writing prepared by him or prepared by another at his instance and signed by him or otherwise authenticated by him. . . ."
Neither of the witnesses in the instant case indicated that they had signed or authenticated their statements. It was incumbent upon the appellant to make such inquiry. Fortenberryv. State, 55 Ala. App. 1, 312 So.2d 573 (1975). *Page 760 
The appellant made no showing that the statements were essential for cross-examination. There was no indication that the State used any of the statements to question the witnesses at trial. In order to show a denial of due process under Bradyv. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the evidence sought must be essential to guilt or innocence. This was not shown in the instant case. We believe the trial court did not abuse its discretion in denying production of the written statements. Cooks, supra.
The appellant cites the federal Jencks Act, 18 U.S.C. § 3500, and several federal cases in support of his argument. Those authorities cited by appellant apply only to federal criminal prosecutions. Sanders v. State, 278 Ala. 453, 179 So.2d 35
(1965).
 II
The appellant contends that the State failed to lay a proper predicate for the admission into evidence of the photoelectric intoximeter (PEI) test.
 A
The appellant contends that the State presented insufficient evidence to establish that the PEI test had been officially approved and adopted by officials of the law enforcement agency that administered the test.
Section 32-5-192 (a), Code of Ala. 1975, requires that the law enforcement agency must designate which test (blood, breath or urine) is to be administrated. Estes v. State, Ala.Cr.App.,358 So.2d 1050, cert. denied, Ala., 358 So.2d 1057 (1978). This information may be supplied by the officer who administered the test. Estes, supra.
Scottsboro Police Officer Jack Ledwell administered the PEI test to the appellant in the instant case. Officer Ledwell testified that he transported the appellant to City Hall where a photoelectric intoximeter was located to determine the alcoholic content of appellant's blood. Officer Ledwell testified he was licensed to operate the PEI test. Officer Ledwell's certification, issued by the State Department of Public Health and admitted into evidence as State's Exhibit 14, certified him to operate the PEI only. Officer Ledwell testified he followed the rules and regulations promulgated by the Department of Public Health. Those rules and regulations were admitted into evidence. Officer Ledwell testified he followed a form card issued by the Department of Public Health in administering the PEI test to the appellant. That card was admitted into evidence as State's Exhibit 15 and shows Officer Ledwell as the operator and the appellant as the subject.
Although there was no specific testimony from Officer Ledwell stating which test the Scottsboro Police Department had authorized, we believe a reading of the whole of Officer Ledwell's testimony can leave no doubt as to which test was, in fact, designated and authorized. Officer Ledwell testified that the PEI test was "standard operating procedure" for the city of Scottsboro. We believe the proper predicate was laid. Estes, supra.
 B
The appellant next contends that the State failed to prove that he voluntarily consented to take the PEI test as required by § 32-5-192, supra. Section 32-5-192 does not require voluntary consent for one lawfully arrested for driving while intoxicated.
Section 32-5-192, in pertinent part, provides the following:
 "(a) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor. . . . Such person shall be told that his failure to submit to such a chemical test will result in the *Page 761 
suspension of his privilege to operate a motor vehicle for a period of 45 days.
. . . .
 "(b) Any person who is dead, unconscious or who is otherwise in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn the consent provided by subsection (a) of this section and the test or tests may be administered, subject to the provisions of this division.
 "(c) If a person under arrest refuses upon the request of a law-enforcement officer to submit to a chemical test designated by the law-enforcement agency as provided in subsection (a) of this section, none shall be given. . . ."
The privilege of driving on the highways of Alabama also entails an "implied consent" on the part of the accused to take a chemical test for intoxication if he has been lawfully arrested for driving while intoxicated. This is so even if one is incapable of refusing to consent. Section 32-5-192 does not require that on a criminal charge one must be told that he has a right to refuse the chemical test. Hill v. State, Ala.Cr.App., 366 So.2d 296, affirmed, Ala., 366 So.2d 318
(1979). The failure to inform a non-consenting motorist of the consequences of his refusal only affects the validity of the revocation of his driver's license — a civil sanction.Garrison v. Dothard, Ala.Civ.App., 366 So.2d 1129 (1979).
The appellant also cites to this court Delarosa v. State, Ala.Cr.App., 384 So.2d 876, cert. denied, Ala., 384 So.2d 880
(1980), for the proposition that consent must be voluntarily given. In Delarosa the defendant was not under arrest and was not in custody. Therefore, that case does not apply in the instant situation where the appellant was under arrest for driving while intoxicated and in custody at the time of the PEI test.
 III
The appellant contends that the prosecutor committed reversible error by commenting during closing argument on failure of the appellant to testify.
At the end of closing arguments and outside the presence of the jury, counsel for the appellant moved for a mistrial:
 "MR. LIVINGSTON: The defendant would move for a mistrial at this point in time on the grounds that the State's comments, solicitor's comments in the closing argument of the defendant's failure to testify; in his closing argument, the District Attorney, in responding to or replying in regarding the witness, McCamy's (sic) failure to testify pointed at the defendant and stated to the jury, `He is the driver; there is the witness,' or words to this effect, which the Reporter has transcribed.
 "MR. DUKE: I consider that a totally inaccurate statement of what was said; and I hope it is transcribed.
 "THE COURT: I recall the statement being that the District Attorney pointed in some direction and said, `There is the passenger.'
 "MR. LIVINGSTON: He said, `There is the driver'; that is my recollection; anyway, the Reporter has it down.
 "THE COURT: All right; motion denied. Bring the jury in."
In order to predicate error on prejudicial comments of the prosecutor, counsel must either have the court reporter transcribe the statements objected to into the record or else state the substance of the statement or comment into the record in sufficient detail that this court can comprehend what was said. Whitt v. State, Ala., 370 So.2d 736 (1979); Tillman v.State, Ala., 374 So.2d 926 (1979). In the instant case, the objection was fragmentary and the substance of the prosecutor's comments was not set out with sufficient clarity for us to determine whether or not the comment pointed out to the jury the appellant's failure to take the stand and testify. Defense counsel's rendition of the comment was disputed by both the prosecutor and the trial judge when the objection was made. We cannot judge from the record who was correct in this regard, but the law presumes the ruling of the trial court to be correct in *Page 762 
the absence of a clear showing otherwise. Huffman v. State, Ala.Cr.App., 360 So.2d 1038 (1977), affirmed, Ala.,360 So.2d 1045 (1978).
In any event, the objection came at the end of closing arguments and not at the time the comment occurred. The objection came too late, and it was likewise too late to set out on motion for new trial the court reporter's transcript of the prosecutor's comments. King v. State, 48 Ala. App. 154,262 So.2d 764 (1972), cert. denied, 288 Ala. 744, 262 So.2d 767
(1972).
The comment complained of, shown in Defendant's Exhibit 1 introduced in the hearing on motion for new trial, appears as follows:
 "He makes you think we should have put Mr. McCamey on, the passenger; the passenger, there is the passenger; the driver. Where is Mr. McCamey? If they wanted to hear his testimony, I presented my case in the best way I knew how and then he wants to say, `Why didn't he put on Mr. McCamey?' Don't you know if there had been another car, Mr. McCamey would have been here to testify? Can't you see that? That is obvious; the passenger in the car would have been here to testify; but he is not here to testify; it's not up to us to bring in his witnesses for him."
The above statement appears to be a reply to an earlier defense comment that the State should have called as a witness the passenger in appellant's truck, Charlie McCamey. We do not take the above statement to be even an indirect comment of the failure of the appellant to testify. We, therefore, find no abuse of discretion on the part of the trial court in denying the appellant's motion for a mistrial and his subsequent motion for a new trial. Washington v. State, 259 Ala. 104,65 So.2d 704 (1953).
AFFIRMED.
All the Judges concur.