492 So.2d 293 (1986)
Ex parte Dondi Joe REED.
(Re Dondi Joe Reed v. State of Alabama).
85-94.
Supreme Court of Alabama.
March 7, 1986.
Rehearing Denied March 31, 1986.
Paul M. Harden, Monroeville, for petitioner.
Charles A. Graddick, Atty. Gen., and Gerrilyn V. Grant, Asst. Atty. Gen., for respondent.
TORBERT, Chief Justice.
Defendant, Dondi Joe Reed, was convicted in the Monroe County Circuit Court on the charge of driving under the influence, pursuant to Code 1975, § 32-5A-191. He was given a sentence of six months in the county jail and a fine of $1,000.00 plus costs. The Court of Criminal Appeals affirmed the conviction without issuing an opinion. 479 So.2d 87.
Under Rule 39(k), A.R.A.P., defendant has presented the following facts for review: Defendant was arrested by a Monroe County deputy sheriff after he had been observed by several people driving on the wrong side of the road. Two of the State's witnesses testified that, after seeing defendant driving on the wrong side of the road, they turned their vehicle around to follow him and get his tag number. After following defendant a short distance, the witnesses passed defendant's car. They travelled further and stopped at an intersection; defendant drove up behind them, running his vehicle into the back of a cattle trailer their vehicle was towing. The two men then got out of their vehicle and chased defendant on foot, subsequently catching him and keeping him in the cattle trailer until the time of his arrest. The deputy sheriff testified that when defendant was arrested he appeared to be intoxicatedthat he was not steady on his feet, his speech was slurred, and he smelled of alcohol. Upon being transported to the Monroe County jail, a photoelectric intoximeter (P.E.I.) test was administered to defendant by Officer Steve Griffis. At defendant's trial, the State introduced a certified *294 copy of the State Board of Health regulations concerning the P.E.I. test. The State also had Officer Griffis testify that he was a certified P.E.I. operator, that he had checked the machine and found it to be in working order, and that defendant's reading on the test was "point seventeen grams per cent." We find this statement of the facts to be supported by the record in this case. See, Rule 39(k) A.R.A.P.
Following the affirmance of his conviction by the Court of Criminal Appeals, defendant petitioned this Court for a writ of certiorari. His petition properly asserted two issues for review by this Court: (1) Was the trial court in error in admitting the results of the P.E.I. test into evidence without a showing by the State that the testing equipment had been periodically inspected by an agent of the State Board of Health? and (2) Was the trial court in error in admitting the results of the P.E.I. test into evidence without testimony that the law enforcement agency administering the test had officially adopted this test method?

I.
Defendant initially contends that the State failed to lay the proper predicate for the admission of the P.E.I. test results, since it did not show that the test equipment had been periodically inspected by an agent of the State Board of Health. Defendant cites this Court to the case of Patton v. City of Decatur, 337 So.2d 321, 322-23 (Ala.1976), for the proposition that the State must show that the test was performed according to the methods approved by the State Board of Health. He then relies on the following rule of the State Board of Health:
"420-1-1-.01 Breath

"(3) Methods Approved by the State Board of Health
"(a) There shall be a periodic inspection of each breath testing instrument. The inspection shall be conducted at reasonable time intervals set by the State Health Officer through the Technical Director."
Rules of State Board of Health, Rule 420-1-1-.01(3).
In Ex parte Bush, 474 So.2d 168 (Ala. 1985), this Court addressed the issue of what elements were necessary to lay the proper predicate for admissibility of the P.E.I. test results. There we said:
"This predicate may be established by showing, first, that the law enforcement agency has adopted the particular form of testing that was in fact used. Alabama Code 1975, § 32-5A-192(a) [sic, § 32-5-192(a)]. See Estes v. State, 358 So.2d 1050 (Ala.Crim.App.), cert. denied, 358 So.2d 1057 (Ala.1978). Second, there must be a showing that the test was performed according to methods approved by the State Board of Health. Alabama Code 1975, § 32-5A-194(a)(1). See Commander v. State, 374 So.2d 910 (Ala.Crim.App.1978). This may be proved by the introduction of the rules and regulations the officer followed while administering the test and the officer's testimony that he did, in fact, follow those rules when he administered the test in question. Parker v. State, 397 So.2d 199 (Ala.Crim.App.1981). Patton v. City of Decatur, 337 So.2d 321 (Ala. 1976). Third, there must be a showing that the person administering the test has a valid permit issued by the State Board of Health for that purpose. Alabama Code 1975, § 32-5A-194(a)(1)."
474 So.2d at 170.
It is under the second element of the Bush predicate that defendant contends that the State needed to show a periodic inspection of the testing equipment as part of the predicate. However, we believe that imposing such a requirement for admissibility is not justified by our previous cases on the subject, the applicable statutes, or the rules of the State Board of Health.
In Bush, we held that it was not a necessary part of the predicate for the admissibility of the P.E.I. test results that the State show that the person who had previously calibrated the test equipment was certified by the State Board of Health. After reviewing the applicable statutes, *295 § 32-5A-194 and § 32-5-192(a), Code 1975, and the rules promulgated by the State Board of Health, we held that such a showing would be "superfluous, since the accuracy of the test results depends upon the final calibration by the administrator of the test, and not the previous calibrator." Bush, supra. Bush emphasized that the accuracy of the test results depends upon the final calibration by the test operator at the time the test is given. It is therefore the "methods approved by the State Board of Health" for the point in time that the test is given that must be shown by the State as part of the predicate for admissibility.
The methods established by the State Board of Health with respect to the point in time of the administering of the P.E.I. test is found in the following rule:
"(3) Methods Approved by the State Board of Health
"...
"(b) Approval of Instrumentation.
1. Photo-electric Intoximeter. The approved procedure, technique, or method of operation appears on the Photo-electric Intoximeter Operating Record Card."
Rules of State Board of Health, Rule 420-1-1-.01(3)(b). The clear import of this rule is that the test operator must follow the method or procedure outlined on the "operating record card" when administering the P.E.I. test. It is this method, stated on the operator's card, which the test operator must testify to in order to satisfy the predicate for admissibility of the P.E.I. test results. Therefore, there is no need for the State to offer testimony concerning a periodic inspection of the testing equipment in order to lay the predicate for admissibility of the P.E.I. test results.

II
Defendant's second argument is concerned with the first element of the predicate stated in Bush, supra, namely, that the State must show that the law enforcement agency administering the test had adopted that particular form of testing. Defendant contends that the State failed to introduce any evidence that the Monroe County Sheriff's Department had adopted the P.E.I. form of testing. In this respect, defendant argues that the State failed to lay the proper predicate as required by this Court. See, e.g., Bush, supra; Patton v. City of Decatur, 337 So.2d 321, 323 (Ala. 1976).
In reviewing the record in this case, we are unable to locate any specific testimony to the effect that this particular testing method was adopted by the agency administering the test. The State argues that this lack of specific testimony on this point still does not require a reversal of defendant's conviction because the Court may look to the entire testimony of Officer Griffis for this information. In support of this proposition, the State cites the case of Redus v. State, 398 So.2d 757 (Ala.Crim.App.), cert. denied, 398 So.2d 762 (Ala.1981). In that case, the opinion of the Court of Criminal Appeals provided the following:
"Although there was no specific testimony from Officer Ledwell stating which test the Scottsboro Police Department had authorized, we believe a reading of the whole of Officer Ledwell's testimony can leave no doubt as to which test was, in fact, designated and authorized. Officer Ledwell testified that the PEI test was `standard operating procedure' for the city of Scottsboro. We believe the proper predicate was laid."
398 So.2d at 760.
The State contends that the testimony of Officer Griffis that part of his duties at the sheriff's department was to administer P.E.I. tests and that he was certified to administer such tests was enough to establish that the law enforcement agency had adopted this form of testing. Although the State's reliance on Redus, supra, is not misplaced, we do not believe that the testimony in this case rises to the level of the testimony found in Redus. There is nothing in Officer Griffis's testimony to indicate that the P.E.I. form of testing was "standard operating procedure" for the Monroe County Sheriff's Department.
*296 Nor do we find that the testimony in this case rises to the level of the testimony given in Estes v. State, 358 So.2d 1050 (Ala.Crim.App.), cert. denied, 358 So.2d 1057 (Ala.1978), wherein it was also held that the absence of specific testimony on this point was not fatal to a conviction. In that case, the Court of Criminal Appeals stated the following:
"In this regard, Sergeant Mason [the test operator] testified that he had been operating the PEI test `ever since they first started; its been I'd say eight or ten years'; that in that time he had given well over a thousand tests; that he was sent to the Police Academy in Montgomery for training; that he was licensed by the State Board of Health; and that he followed a check list and the rules of the State Board of Health in administering the test. In our opinion this was a sufficient compliance with the Alabama Chemical Test for Intoxication Act to constitute a proper, if not formal, predicate for the admission of the test results."
358 So.2d at 1054.
Officer Griffis's testimony does not contain any reference to the number of times he had administered this kind of test or the number of years he had administered such a test. His testimony consisted mainly of general statements concerning the principles of a P.E.I. test and the steps a P.E.I. operator takes in administering the test.
Even after reviewing the entire testimony given by Officer Griffis, we are unable to say that the State introduced evidence that the law enforcement agency administering the test had adopted this method of testing. We note that this element of the predicate may be easily met by the State's proffering such testimony from any officer within the department who would be in a position to know that information, and this may include the officer administering the test. Estes, 358 So.2d at 1053.
Because the State failed to introduce any testimony that the agency administering the P.E.I. test to defendant had adopted that method of testing, the judgment of the Court of Criminal Appeals is reversed and the case is remanded to that court.
REVERSED AND REMANDED.
FAULKNER, JONES, SHORES and BEATTY, JJ., concur.
ALMON and ADAMS, JJ., concur in the result.
MADDOX, J., dissents.
MADDOX, Justice (dissenting):
I must respectfully dissent from that portion of the majority opinion which holds that the State failed to introduce sufficient evidence to prove that the Monroe County Sheriff's Department had adopted the P.E.I. test as the one to be administered pursuant to Code 1975, § 32-5-192. The majority, in my opinion, imposes on the State a standard of proof which is too strict, and I believe that, looking at the testimony as a whole, the State met its burden of proof to establish the proper predicate for the admission of the test results. In short, I believe that this case is similar to Redus v. State, 398 So.2d 757 (Ala.Crim.App.), cert. den., 398 So.2d 762 (Ala.1981), and Estes v. State, 358 So.2d 1050 (Ala.Crim.App.), cert. den., 358 So.2d 1057 (Ala.1978). Requiring a new trial just for the purpose of having the State present additional evidence to show that the P.E.I. test was, in fact, adopted by the department seems to me to be an unnecessary requirement, which can only result in additional costs to the State and the defendant. In other words, I am confident that the State can easily prove that the P.E.I. test had been adopted by the Monroe County Sheriff's Department as the one to be administered, and that the State could have proved this fact on the initial trial had the failure to do so been called to its attention by a specific objection on this ground as opposed to the general ground which appears in this record.
Additionally, under the facts of this particular case, and in view of the totality of the evidence with regard to the intoxication of the defendant apart from the P.E.I. test *297 results, it appears that any error which may have been committed did not substantially affect the rights of the defendant. Rule 45, Ala.R.App.P.