68 So.2d 2

**RIVERS v. BLACK.**

**6 Div. 435.**

Supreme Court of Alabama.

Oct. 29, 1953.

Jackson, Rives, Pettus & Peterson, Birmingham, for appellant.

Taylor, Higgins, Windham & Perdue, Birmingham, for appellee.

SIMPSON, Justice.

This was a suit for damages for personal injuries resulting from a collision between

the automobile of the defendant (appellant) and the automobile driven by L. L. Jackson and in which plaintiff (appellee) was riding as a passenger. The complaint contained two counts, one based on simple negligence and the other on wantonness. There was a verdict for plaintiff and the defendant has appealed.

The accident occurred at the intersection of 16th Street and 11th Avenue in the city of Birmingham. The Jackson car was proceeding eastwardly along the avenue, defendant's car moving northwardly on the street. The time was approximately 11:30 at night. Stop signs were located on 16th Street at each approach to 11th Avenue. According to the testimony of plaintiff's witnesses, defendant failed to stop at the intersection, but proceeded into the avenue and collided with the Jackson car. As a result of the impact, plaintiff was thrown out of the car and into the street, sustaining severe and painful injuries. On the other hand, the defendant testified that he brought his car to a stop before undertaking to cross at the intersection and did not see the Jackson car until it ran into his car.

Appellant has assigned thirteen errors, twelve of them relating to the examination of plaintiff's witness E. J. Jackson based upon a so-called Drunkometer test, and the last assignment grounded upon the overruling of defendant's motion for a new trial. While the motion for new trial contained other grounds, the sole insistence in brief is that the motion was due to have been granted because of the rulings on admission of testimony of witness Jackson.

This witness testified that he was a police officer of the city of Birmingham and that his duties were, on the date of the accident, those of "Assistant Warden to receive prisoners in and out, running meter tests." He was asked, "You say meter tests, what do you mean?" and answered, "Sobriety tests on the Drunkometer." Thereupon defendant objected to "testimony about a meter test." The court properly overruled this objection on the ground that witness could state what his duties were.

■ The witness was then asked, "What is a meter test?" In overruling the objection to this question we perceive no error. It was clearly competent for the witness to show the nature of the test made as a part of his duties. He answered that "a Drunkometer test is a sobriety test taken from the breath, of the amount of alcohol in the breath." There was no motion to exclude.

■ Thereupon witness was asked "whether or not on the 21st day of June or the morning of the 22nd day of June, 1951, you had an occasion to see, observe, and run a test on a man by the name of James A. Rivers?"

The following then occurred:

Counsel for defendant: "We object to that on the ground it calls for testimony which is incompetent, irrelevant, immaterial and illegal; invades the province of the jury and Court; doesn't call for the best evidence, and about a matter which is *res inter alios acta;* and is not the standard or legally recognized standard for measurement of intoxication, and prejudicial to the rights of the defendant.

"The Court: I will overrule the objection."

Defendant's counsel: "We except. * * *"

Plaintiff's counsel: "We haven't asked him the result."

"The Court: If you don't propose to, why go into it?"

Plaintiff's counsel: "We expect—we propose to ask him about the man's condition; he saw and observed him."

Plaintiff's other counsel: "I expect to show his condition."

"The Court: If you are going to show what the test was, then I think it is proper he describe that test so that the jury will understand. If you don't propose to show it, I don't see any use in going into what it is unless you show his opportunity to see the man."

Plaintiff's counsel: "Yes, sir; to show his opportunity to observe him."

"The Court: I think you can show that without referring to the test, if he was around him. * * *"

Exception by the defendant.

The witness then answered the question, "Yes, sir; I did."

It is to be observed that the question was whether or not witness "had an occasion to *see, observe, and run a test* on" defendant. The objection was to the question as a whole. It was competent and material to show that witness had an opportunity to see and observe defendant and from the foregoing it reasonably appears that the court by its ruling thus in effect limited the question. Proceeding, plaintiff's counsel asked, "What type of test did you run?" Defendant objected, objection was overruled, and the witness answered, "We gave him the drunk test and also the finger to nose test." There was a motion to exclude the answer and this was overruled. In these rulings we think there was no error. The answer as given was a mere generality, with no indication of the result. Moreover, that which followed tended to confine the inquiry to witness' opportunity to observe defendant. He was asked, "Did you talk to the individual or hear him talk in your presence, or in the presence of other police officers?" and answered, "I talked to him; yes, sir." Again the witness was asked, "I will ask you whether or not you have had occasion to see and be with people under the influence of intoxicating beverages?" and answered, "Yes, sir; lots of them."

Thereafter the following occurred: "Q. Do you know a person when you see one, under the influence of intoxicating beverages?" Defendant's counsel objected, the court overruled the objection, and witness answered in the affirmative. Plaintiff's counsel then asked: "Q. I will ask you whether or not you formed an opinion as to whether or not Mr. James A. Rivers was under the influence of intoxicating beverage." Objection by defense counsel was overruled, and the witness answered, "Yes, sir. Q. What was your opinion. A. He was drunk."

█ A lay witness may testify that in his opinion a person was drunk. Dozier v. State, 130 Ala. 57, 30 So. 396; Gladden v. State, 36 Ala.App. 197, 54 So.2d 607, certiorari denied, 256 Ala. 368, 54 So.2d 610.

Finally, witness was asked if he had made a record of the different tests made on defendant and if it was reduced to writing. The witness answered affirmatively. He was shown an instrument or document and asked if that was a copy of the report and findings of witness with reference to the different tests he had run. Defendant objected and the court overruled the objection, stating: "This is a preliminary question, whether that is or is not a copy." The witness answered "Yes," whereupon plaintiff "offered the report in evidence." Counsel for defendant objected and counsel for plaintiff stated, "I withdraw the report, or offer." The act of withdrawal, of course, left the trial court nothing to rule upon.

█ Appellant in brief argues for error in the several rulings hereinabove set out and considered upon this proposition: Where there is evidence of scientific tests, such as Drunkometer tests, to determine the amount of alcohol in the breath, it is essential that the reliability of the tests and results thereof be generally recognized and accepted. Failure of the evidence to satisfy this requirement makes such evidence as to the tests inadmissible. Supportive of this there are cited People v. Morse, 325 Mich. 270, 38 N.W.2d 322; Jones on Evidence, Vol. 2, § 410a; Frye v. United States, 54 App.D.C. 46, 293 F. 1013, 34 A.L.R. 145.

Though the question of admissibility of evidence of Drunkometer tests to prove intoxication has not been before this court directly, we find no fault with the rule as announced in the authorities cited by appellant. We think there is apt analogy in our own cases dealing with admissibility of scientific and medical works, collected in 9 Alabama Digest, Evidence, ☜ 363. But as we have shown above, that principle is not controlling upon the questions asked and the rulings made thereon. That is to say, the questions as framed related to the Drunkometer tests as incidental matter, none of them so framed as to invite proof of the ultimate issue of drunkenness by the result of such tests.

Appellant contended in the trial court and again here that the examination of the witness E. J. Jackson should be considered as a whole, and so considered had the effect

532

of injecting into the case illegal and inadmissible evidence. At one point in the proceedings counsel for defendant said:

"At this time, if the Court pleases, the defendant wants to request that the Court grant him a mistrial because of the fact that counsel for the plaintiff has gone into certain questions about certain tests which were given the defendant by the witness, and has failed to follow up those preliminary questions which we objected to, and which the Court overruled our objections to, and we think that the effect of counsel's preliminary questions without pursuing the matter further has had an effect of prejudice to the rights of the defendant, and has affected the right of the defendant to a fair trial. We think if counsel for the plaintiff was going into the question of any tests, and as I understood, they stated to the Court they proposed to show such tests, and they now back off that subject, and we ask for a mistrial as being prejudicial and inflammatory to the rights of the defendant."

The motion for mistrial was overruled and it is argued here that we should hold the trial court in error in such ruling, as well as in overruling defendant's motion for a new trial.

The proposition has often been recognized that the intentional and persistent endeavor of counsel to inject into a case matters which are wholly illegal and inadmissible in order to create an unwarranted and prejudicial atmosphere against the adverse party is a practice not to be condoned and one which calls for a reversal. Moore v. State, 30 Ala.App. 552, 9 So.2d 146; Blue v. State, 246 Ala. 73, 19 So.2d 11; Whitfield v. State, 21 Ala.App. 490, 109 So. 524; Alabama Fuel & Iron Co. v. Benenante, 11 Ala.App. 644, 66 So. 942. Such a course, however, would not, we think, be warranted in this case. In the first place, the evidence was not wholly illegal and inadmissible, as we have shown. In the second place, we cannot say with assurance that the evidence as given with respect to the tests created a situation wherein the defendant was inevitably deprived of

his substantial rights. We find that three police officers other than E. J. Jackson gave it as their opinion that the defendant on the occasion of the accident was intoxicated or drunk. Other lay witnesses so testified. Of greater significance, the defendant himself testified on direct examination that over a period of hours prior to the accident he had been drinking. He stated the quantity of whisky consumed by him, giving the approximate times, leading closely to the time of the accident. He testified that he was "technically" under the influence of alcohol but not drunk. Even eliminating completely the testimony of the witness E. J. Jackson, we would not, we think, be warranted in holding that a verdict favorable to the plaintiff should have been disturbed.

Our conclusion is that no error to reverse is made to appear.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and CLAYTON, JJ., concur.