The Supreme Court reversed and remanded this case on July 9, 1976. An application for rehearing was filed in that Court and on August 6, 1976, the Court said:
 "By reversing and remanding this case we do not foreclose the right of the Court of Criminal Appeals to consider the various contentions of the appellant regarding other errors she alleges occurred in the trial of this action; not heretofore addressed by the Court of Criminal Appeals."
The evidence for the State shows that on November 15, 1974, John W. McCormick, Jr., Deputy Sheriff of Mobile County, along with his partner Deputy McAfee, were on routine patrol on the Old Pascagoula Road in Mobile County. He testified that they approached the intersection of McDonald Road and Old Pascagoula. They turned south on McDonald Road at which time a car swerved over into their lane of traffic and forced them partially off the road.
He described the automobile as an old white Oldsmobile and he fixed the time at approximately 5:20 to 5:30 p.m. He further stated that they turned around and the traffic was pretty heavy at that time and it took them a few minutes to get turned around. They headed back down toward Pascagoula to try to find the car that ran them off the road. He stated that they came upon the automobile approximately a mile and a half from the point where they first saw it. He said that the car was stopped with the nose down into a ditch at Old Pascagoula and Al Johns Road, that appellant was seated behind the steering wheel and there was a boy in the car with her.
He further testified that he observed appellant at that time and she seemed disoriented and her speech was slurred and he smelled a strong odor of alcohol in the automobile. He noticed that there was some beer in the car but it was not open. He expressed his opinion that she was intoxicated.
On cross-examination he testified that he could not identify appellant as being the driver of that car that almost ran them off the highway. He stated that he did not see appellant driving a car on a public highway. He further stated that the stopped car in which appellant was sitting under the steering wheel was white over a dark blue Oldsmobile and that he could only identify the car by its color. He further testified that he could not state that he had seen appellant driving this automobile in Mobile County on that date or any other date.
Roy Price testified that he was a deputy sheriff of Mobile County and had been so employed for five years. He stated that he was a patrolman and that he was assigned to patrol Area 19 in Theodore to Dauphin Island and from Irvington to Bayou Road to the bay.
He further testified that part of his duties consisted of conducting examinations of motorists to determine whether or not they were intoxicated. He stated that he took a course in Montgomery approximately two years before the date of November 15, 1974 and a refresher course in 1975. He stated that the course he took was to learn how to operate a photo electric intoximeter. He said that this instrument was used in Mobile County in the State of Alabama and *Page 267 
had been certified by the State Board of Health. He further testified that he had run this test on approximately 150 to 200 people. He was asked what was involved in running the test and he went into an elaborate discussion of what he did from a checklist that was in his possession and that he used this test list on appellant. He stated that he had a permit or certificate from the State Board of Health to operate this photo electric intoximeter. He further stated that appellant was arrested at 5:45 p.m. and the test was given at 6:17 p.m. and that the machine had been checked by Inspector Myers on November 6, 1974, nine days before he conducted the test on appellant. He said that the test showed an alcohol level of .20.
The appellant's counsel moved to exclude this witness's testimony on the ground that the proper predicate had not been laid either for the function of the machine or the ability of the operator. The Court overruled the motion to exclude this witness's testimony.
On cross-examination Mr. Price testified that he had no independent recollection of this lady at all except that he remembered her by sight, that he only had the checklist to go on. He further testified that he did not see appellant driving an automobile on a public highway in Mobile County on the date of the alleged offense. He further stated that he observed appellant for about 20 minutes before he administered the test and that she did not smoke or have anything to drink during that period of time.
Counsel for appellant in his motion to exclude told the Court that the witness had testified three times he never saw the woman driving the automobile on a public road in Mobile County, that the car was stopped when the officers came upon her and that there was no showing or proof that appellant had not had anything to drink from the time that the officers first saw her until they came upon the automobile partially in the ditch.
It is crystal clear as shown by Title 36, Section 1, that the definition of "highway" means "Every way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular travel. The term `highway' shall include the full width of the right of way of any public road, street, avenue, alley, or boulevard, bridge, viaduct or trestle, and the approaches thereto, within the limits of the state of Alabama. The term `highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons." The evidence is clear and unequivocal that no officer saw appellant operating an automobile upon a public highway in Mobile County on the date that she was arrested and therefore the motion to exclude should have been granted.
In Gamble v. State, 36 Ala. App. 581, 60 So.2d 696, this Court held:
 "Evidence of defendant's drunken condition sometime after alleged offense was committed is not admissible, unless it is first shown that defendant had no access to intoxicating liquor in meantime."
The Court, in Gamble, supra, held it reversible error to allow a witness to state that when he saw the defendant he was intoxicated or drunk and smelled of whiskey.
The record is entirely silent as to whether or not appellant had consumed any intoxicating liquor or beverages from the time the officers first saw the automobile which they alleged almost ran them off the highway until the time they came upon the automobile a mile and a half distance away.
It will be noted that in the Gamble case some 25 minutes elapsed from the time that officers first saw the defendant until they stopped him, whereas in the present case some 32 minutes elapsed from the time she was arrested until the test was administered.
More importantly, we think the testimony of Deputy Price should have been excluded as the proper predicate was not laid for his testimony. Ex parte Patton, Ala., 337 So.2d 321, rendered on June 18, 1976, wherein the Court said:
 "Nowhere is it shown that duly adopted methods or regulations of the State Board of Health were followed in administering *Page 268 
the test. The trial court therefore had before it no certified methods promulgated by the Board of Health for the administration of the test and consequently was unable to ascertain standards against which the evidence could be measured.
 "While it is unnecessary for the prosecution to resort to the P.E.I. test in order to make a prima facie case [Broxton v. State, 27 Ala. App. 298, 171 So. 390 (1936); McMurry v. State, 28 Ala. App. 253, 184 So. 42 (1938)], the results of the test, which we hold were inadmissible, were highly prejudicial.
 "Our decision in the instant case does not stand for a proposition that every legislative delegation of power gives rise to a mandatory duty to promulgate administrative standards in order for that power to be validly exercised. But our inability here to ascertain the validity of the results obtained from a technologically sophisticated device due to questionable operator technique, demonstrates the absolute necessity for written procedural methods governing its use. In this regard, unwritten standards of the Board of Health are no better than no standards at all. See Sun Ray Drive-In Dairy, Inc. v. Oregon Liquor Control Comm., 16 Or. App. 63, 517 P.2d 289 (1973). The need for written standards becomes particularly acute where, as here, a finding of criminal conduct may well turn upon adherence to and rigid compliance with such standards.
 "Our decision, moreover, is not to be construed as a rejection of results of the Photo-Electric Intoximeter when introduced as evidence against persons charged with driving while under the influence of intoxicating liquor. Although intoxication levels obtained from the P.E.I. and similar blood-alcohol content measuring devices have been fraught with evidentiary challenges as to their probative value in criminal proceedings; see State v. Bessette, 130 Vt. 438, 296 A.2d 179 (1972); we have been willing to accept these results and statutory presumptions which attach therefrom where the record is devoid of matters which substantially draw into doubt their accuracy. Rivers v. Black, 259 Ala. 528, 68 So.2d 2 (1953); Bonner v. State, 52 Ala. App. 346, 292 So.2d 460 (1974). Furthermore, the legislature has declared that the results of P.E.I. tests `shall be admissible as evidence.' Tit. 36, § 155 (a), supra. Accordingly, in passing on a conviction which was based in part on the results of a P.E.I. test, the only concern of this court is to ascertain whether the will of the legislature has been obeyed.[1]
We hold that an affirmative response to that inquiry cannot follow where there are no written standards governing the manner in which P.E.I. tests are to be performed by state law enforcement agencies.
 "It would be a simple matter to profer a duly certified and authenticated copy of methods or regulations duly adopted or approved by the State Board of Health. When such copy is admitted in evidence, then the proponent could ask the witness predicatory questions."
* * * * * *
Nowhere in this record can it be found a duly certified and authenticated copy of methods or regulations adopted or approved by the State Board of Health was ever introduced in evidence. For the errors noted, this case is
REVERSED AND REMANDED.
All the Judges concur.
[1] "When the legislature declares that certain evidence is admissible, the courts are bound by that declaration. This rule prevails until the admission of that evidence runs afoul of the state or federal constitutions. Evidence can be so unreliable and inconclusive as to violate due process of law. Flurry v.State, 52 Ala. App. 64, 289 So.2d 632 (1973); United States v.Fay, 2 Cir., 284 F.2d 426 (1960); Blackburn v. State ofAlabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960)." *Page 269