LEIGH M. CLARK, Retired Circuit Judge.
A jury found the appellant guilty under an indictment which (omitting the formal parts) charged the following:
“Rosemary W. Miller ... did agree with Melisha Vandiver, Linda Ashley and Cindy Nichols to commit the crime of Robbery in the First Degree, in violation of Section 13A-8^41 of the Code of Alabama, with the intent that conduct constituting said offense be performed and that the said Melisha Vandiver did, in the course of constituting a theft of lawful currency of the United States of America of the combined value of, to-wit: $200.00, the property of Howard Barnett, used force against the person of Terry McLe-more, with the intent to overcome his physical resistance or physical power of resistance, while the said Melisha Vandi-ver was armed with a deadly weapon, to-wit: a shotgun, in furtherance of said crime, in violation of Section 13A-4-3 of the Code of Alabama.”
*272 After a sentencing hearing at which it was charged and proved that defendant had been previously convicted of a felony, the court fixed her punishment at imprisonment for ten years and sentenced her accordingly.
The appeal presents no challenge of the sufficiency of the evidence to support the verdict, the appropriateness of the punishment fixed by the court, or as to any matter other than the action of the court in overruling defendant’s motion to suppress as evidence an in-custody statement made by appellant to police officers while she was intoxicated. The evidence is undisputed that she was “highly intoxicated” and “very hysterical” at the time she made the statement. In support of appellant’s contention that her statement was inadmissible by reason of the prohibition of the Fifth Amendment to the Constitution of the United States against involuntary self-incrimination of an accused in a criminal case, appellant relies particularly on the quoted testimony of Russellville Police Officer Donnie McGuire as follows:
“Q. Mr. McGuire, you say that in your opinion Rosemary was highly intoxicated, on this occasion?
“A. Yes sir.
“Q. Did you see any evidence of any drinking in the car?
“A. Yes sir.
“Q. What kind of evidence?
“A. There was beer cans all in the car and there was a part of a bottle of Vodka laying under her feet.
“Q. Do you recall how many beer cans? “These were empty, I take it?
“A. Yes sir.
“Q. Do you recall how many there were? “A. There was, approximately, 6 to 10. “Q. Was there any Vodka gone out of the pint bottle of Vodka?
“A. There was about a half pint gone.
[[Image here]]
“Q. In your opinion — well, let me ask you this. Was she crying during this time?
“A. Yes sir.
“Q. In your opinion, was she hysterical? “A. Yes sir.
“Q. Would you say she was in a highly agitated emotional state?
“A. Yes sir.
“Q. Did she ask specifically to talk to you?
“A. Yes sir.
“Q. During the course of your conversation with Rosemary, on this occasion, did she appear to be rambling and talking about different things?
“A. Like when they would laugh, in the middle of the street, or something, she would change the conversation and start talking about different things and at that particular time, I didn’t know what she was talking about, but I found out later what she was talking about.
“Q. Were there any other ramblings or anything to indicate to you that she might not be in control of her faculties or senses?
“A. Oh, no sir.
“Q. Officer McGuire, you recall the preliminary hearing that we had in this case some month or a month and a half ago? “A. Yes sir.
“Q. Do you recall Mr. Jolly asking you and I quote, ‘Now after advising the Defendant of her rights, what, if anything, was said?’ and your answer was, T didn’t start asking her any questions, I sat there for a long time listening to what she had to say, because she was talking about several different things, I mean, you know, she was drifting from talking about one thing and then she would talk some about Town Hill Truck Stop.’ Do you recall that statement?
“A. Yes sir.
“Q. Is that a true statement, sir?
“A. Yes sir.
“Q. In effect, would you say she was rambling and talking about different things?
“A. Yes sir.
“Q. What was her appearance, on this occasion, how did she appear, as far as her dress and her physical appearance?
*273 “A. You mean clothing she was wearing?
“Q. Yes sir.
“A. The best I can remember, she had on jeans, a pull over type top. I don’t really remember. Her speech was slurred or anything of that nature, she was just, she was crying and she would get mad from time to time.
“Q. She was highly intoxicated, on this occasion?
“A. Yes sir.
“Q. And very hysterical?
“A. Yes sir.
“Q. Was she screaming or talking in a loud voice?
“A. Yes sir, at times she was.
“Q. Now, these other things she talked about, other than Town Hill Truck Stop, did these other things make any sense to you, at that time?
“A. At that time, they didn’t, I didn’t know what she was talking about.
“Q. You say you could smell alcohol on her?
“A. Yes sir.
“Q. Did you ask Rosemary if she had been drinking?
“A. I don’t remember that.
“Q. Do you recall at the preliminary hearing that we had—
“A. I believe at one time during the conversation, she told me she had been drinking.
“Q. Do you recall at the preliminary hearing the question I asked you and I quote from the transcript, ‘Did you ask Rosemary if she had been drinking,’ and this part is noted as being unintelligible, ‘and taking pills’. And your answer was, ‘Yes, sir, she had, she said she had been drinking all afternoon, she said, Donny, I’m drunk, and I don’t know what I’m doing.’ Did she make that statement? “A. Yes sir.
“Q. At what point in your conversation, did she make this statement? How far along into it?
“A. I don’t remember that.
“Q. Do you recall at the preliminary hearing, I asked you, ‘when did she say that, at what point in your conversation did this occur?’ And your answer was, T believe it was right after I first got in the car, but it came up several different times, while I was sitting in the car talking to her, because she would start to say something and she would say something of the nature, you think I’m crazy, I’ve been drinking, I’m drunk, she was aware she was rambling, but the way I took it, she seemed to be aware she was rambling around.’ Was that your statement, on that occasion?
“A. Yes.
“Q. It is still your opinion that she was highly intoxicated and hysterical, on this occasion.”
There is apparently no disagreement between the parties on appeal as to the governing principle of law as to when an accused has become so intoxicated at the time he makes a confession or inculpatory statement that the statement should not be admitted in evidence. Both parties cite Warren v. State, 44 Ala.App. 221, 205 So.2d 916 (1967), which comprehensively covered precedents on the subject and elsewhere, as found in Annotation: Intoxication of Accused at Time of Confession, 69 A.L.R.2d 361, et seq. In Warren v. State, at 205 So.2d 919, the principle is stated as follows:
“The general rule applicable to confessions obtained from persons under the influence of intoxicants is well stated as follows: ‘ * * * Proof that the accused was intoxicated at the time he confessed his guilt of crime will not, without more, bar the reception of the confession in evidence. But if it is shown that the accused was intoxicated to the degree of mania, or of being unable to understand the meaning of his statement, then the confession is inadmissible.’ (Ann.: Intoxication of Accused at Time of Confession, 69 A.L.R.2d 361, 362, and see authorities collected). “In People v. Schompert, 19 N.Y.2d 300, 279 N.Y.S.2d 515, 226 N.E.2d 305, the court said:
*274 “ ‘Lack of awareness or understanding alone might be sufficient to exclude a confession in the rare case where it clearly appears that at the time of the confession the confessant was so intoxicated as to lack mental capacity, that is, he was unable to appreciate the nature and consequences of his statement. This, no doubt, is the “mania” referred to in the older cases.’
“Our courts recognize the rule that proof of intoxication amounting to ‘mania’ or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words, renders a confession made by him while in such state inadmissible. Eskridge v. State, 25 Ala. 30; Smith v. State, 25 Ala.App. 297, 145 So. 504; Vinzant v. State, 28 Ala.App. 220, 180 So. 736; Ray v. State, 39 Ala.App. 257, 97 So.2d 594.”
There have been several restatements of the principle quoted from Warren v. State, supra. As recently as Tice v. State, 386 So.2d 1180, 1185 (Ala.Cr.App.1980), we find:
“Intoxication, short of mania or such impairment of the will and mind as to make an individual unconscious of the meaning of his words, will not render a statement or confession inadmissible. Medders v. State, Ala.Cr.App., 342 So.2d 49 (1977); Scott, supra [Scott v. State, Ala.Cr.App., 333 So.2d 619 (1976) ].”
From that part of the testimony of Officer McGuire that is particularly relied upon by appellant, and which we have quoted above, there is basis for a conclusion that defendant was so intoxicated at the time of her confession or inculpatory statement as to render it inadmissible in evidence. However, the same conclusion does not necessarily follow when some of the remainder of the officer’s testimony is taken into consideration, particularly the following:
“A. Well, when I got in the car, she said, I’ve got to talk to you about Town-hill Truck Stop, [the place where the undisputed evidence shows that the robbery occurred] and I told her, I said Rosemary, if you are going to talk to me about Townhill Truck Stop, I’ve got to read your rights to you and she said, I know my rights, I’m so ashamed of myself, I don’t know what to do and she was crying and I took the card out of my pocket and read her her rights.
“Q. Tell the Court about that. What happened, how did you do that?
“A. I read it off the card and as I read her her rights, she was going along with me repeating just about the same thing that I was saying to her and said, I know my rights.
“Q. Was she reading it off the card? “A. No sir.
“Q. She was repeating it after you? “A. She was going along with me, just like she had a card.
“Q. Were the lights on in the car?
“A. No sir.
“Q. What were you using to read off the card?
“A. I was using a flashlight.
“Q. You said, she repeated the rights after you?
“A. Yes sir.
“Q. What all did you tell her about her rights, and have you got the card with you?
“A. Yes sir, I told her you have the right to remain silent, anything you say can and will be used against you in a Court of Law. You have a right to talk to a lawyer and have him present, when you are being questioned. If you cannot afford a lawyer, one will be appointed before any questions. You can decide at any time to exercise these rights and not answer any questions or make any statement and I asked her if she understood and I proceeded and said do you understand each of these rights and she kept saying, I know what the rights are and I’m ashamed of myself and how much trouble I’m in and I asked her if she wished to talk to me and she said yeah.
“Q. What happened then?
“A. Okay, she kept asking how much trouble was she in and I told her, I didn’t know, was she involved in it and she said she was driving the car. Well, to start off with, she said Melisha and Dobby had *275 robbed Townhill Truck Stop and then she got down to the point that she said she was driving the car and I asked her if this was the car and she said yes.
“Q. Now, Mr. McGuire, did the defendant recognize, on this occasion, other people who were present?
“A. Yes sir, she did.
“Q. How do you know that?
“A. Because she kept calling them by name and there were several times, you know, that she even recognized who was talking and who was laughing, without looking out, because at one time she got Dannie Price, well, there was probably 25 or 30 feet out in the road and at one time he laughed and she got real mad because he was laughing and said, that he was laughing at her.”
Upon a consideration of all the evidence on the question, we are unable to say that the trial court was in error in overruling defendant’s motion to suppress the evidence pertaining to defendant’s confession or in-culpatory statements. A factual question was presented by the evidence for the trial judge to determine, as to whether defendant was intoxicated to the extent that it amounted to mania or constituted such an impairment of her will and mind as to render her unconscious of the meaning of what she said. The trial court’s ruling was well within its province and does not constitute a basis for a reversal of the final judgment. Perhaps we should note in this connection that on the hearing of the motion to suppress, Officer McGuire testified that defendant “was conscious at all times” while he was there. The defendant testified on the motion to suppress that she did not recall making a statement to Officer McGuire, but in her testimony on the trial before the jury, she testified, inter alia, as follows:
“I remember seeing Donnie McGuire and I hollered and asked him, would he come and talk to me.
“Q. Did he?
“A. Yes sir, he did.
“Q. What did ya’ll talk about?
“A. I was telling him Dobby had told me and Linda and I asked him or I told him they had been in my car and I asked him what kind of trouble I was in.
“Q. Did you know, at that time, your Probation could be revoked for drinking? “A. Yes sir.
“Q. And did you tell Donnie that you had driven the car with Linda Ashley and Cindy Nichols in it?
“A. Yes sir, I did.
“Q. What happened, after you told Donnie this?
“A, I asked him what kind of trouble I was in and he said, he didn’t know that he would take me down to the station and we would talk about it in the morning and I started crying and I told him I was afraid.
“Q. Did he take you to the station?
“A. Yes sir, he did.
“Q. Were you arrested and charged with this crime?
“A. The last thing I remember, they took me in a cell and I laid down on the bed.”
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.