Gregory Lee Adams was found guilty of murder as proscribed in § 13A-6-2 (a)(1), Code of Alabama 1975. He was sentenced to life imprisonment.
On the night of December 9, 1983, the appellant and several friends, including the deceased, David Roth, gathered at the home of a classmate. There they each consumed several cans of beer. Before midnight, they went to a local nightclub, where they remained until about 2:00 a.m. Thereafter, the appellant, the decedent, and two others drove to a friend's house. As the men left the car, harsh words were exchanged between the deceased and the appellant. Jerry Moore testified that the deceased came around from the passenger side of the car and pushed the appellant backward several times until, finally, the two men disappeared behind the house. The appellant testified in his own behalf that while they were behind the house, the deceased hit him either in the back of the head or in the mouth, knocking him down. Moore stated that seconds after the two had disappeared from his view, the appellant reappeared and hurriedly walked into the house. A moment later, Moore stated, the deceased came back towards the car, but stopped, turned around, and also entered the house.
Roger Wright testified that the appellant came into the house and walked straight to the kitchen. The deceased entered a few seconds later, sat down in a chair located in the den, and began talking to Wright about a baseball scholarship he had recently received. Wright testified that while they were talking he heard the rattling of silverware in the kitchen and the appellant walked into the den holding a long butcher knife. Wright testified as follows:
 "David [Roth] was sitting in the chair and, Greg [Adams], he stabbed at him one time and it went to this side of him and David moved over. And then he come back and Greg went to stab him again. I could tell David just froze up. *Page 1162 
He looked up and his eyes got real big, and the knife struck him that time."
After stabbing Roth, the appellant, according to Wright, started "vibrating," with his arms swinging back and forth. Meanwhile, Roth began to crawl along the floor towards the door. Wright, recovering from his initial shock, walked over to Adams and took the knife from him. Wright then helped Roth to his feet and assisted him in walking out to the car. Leaving Roth with Moore, Wright reentered the house, where he saw Adams run into the bathroom. A few minutes later, Adams came out to the driveway, where Roth had collapsed, and attempted to administer mouth-to-mouth resuscitation to him.
Huntsville police Officers Byrom and Clardy arrived and ascertained that Roth was dead. Officer Clardy inquired who was responsible for the stabbing, and appellant Adams responded, "I'm the one that stabbed him." Officer Clardy testified that the appellant was calm and appeared to be acting normally. He could not say whether Adams was intoxicated at that time. After reading Adams his Miranda rights, Officer Clardy took appellant Adams into custody.
Homicide Investigator Renfroe testified that he questioned the appellant around 5:30 that morning and that the appellant did not appear to be intoxicated at that time. After informing him of his Miranda rights, Renfroe then asked Adams if he wished to make a statement. The appellant admitted stabbing Roth, but said that he had acted in self-defense. The appellant later testified that he did not remember stabbing the deceased and that he had no recollection of making either the oral or written statements. He admitted that the handwriting and signature on the written statement were his.
A psychologist called by the defense testified that, in his opinion, the appellant in fact could not presently remember the murder. The court did not permit the psychologist to give his opinion of the appellant's mental state based upon appellant's statements made to him during age regression hypnosis. The appellant raises four issues on appeal.
 I
First, the appellant contends that the court erred to reversal in refusing to receive into evidence certain expert testimony by defense psychologist Dr. Rodger Rinn. Specifically, the appellant contends that Dr. Rinn should have been allowed to testify to his opinion of the Appellant's mental state and that his opinion was based upon statements of the appellant while he was under hypnosis.
The appellant cites Voudrie v. State, 387 So.2d 248
(Ala.Cr.App. 1980), as precedent for his contention that expert opinion which is based upon facts obtained through hypnosis is admissible. In Voudrie, a trained hypnoanalyst was permitted to testify for the defense about the mental state of the accused, based upon what the accused had told him while under hypnosis. However, neither the admissibility of hypnotically obtained information, nor expert opinion based thereon, was at issue inVoudrie. Since the issue was neither raised nor addressed inVoudrie, that case is not authority in support of the admissibility of such evidence. The appellant's arguments attempting to distinguish between the direct testimony of one who had his memory restored through hypnosis and the testimony of an expert whose opinion is based upon facts gleaned from the subject while the subject is in hypnosis are not persuasive.
"In appropriate cases, Alabama follows the rule in Frye v.United States, 293 F. 1013 (D.C. Cir. 1923), for safeguarding `against admission into evidence of facts gleaned from an unreliable scientific test.'" Prewitt v. State, 460 So.2d 296,301 (Ala.Cr.App. 1984). This court has expressly stated that the Frye test is the appropriate standard to apply in determining the admissibility of expert opinions which are based upon information obtained through hypnotic means. As another court has stated in a similar case:
 "[T]he proffered expert testimony upon the defendant's state of mind was equivalent *Page 1163 
to an offer to relate the defendant's exculpatory declarations while in hypnosis together with the witness' opinion of the defendant's truthfulness in making these assertions. The validity of this facet of the defendant's offer of proof necessarily rested wholly upon the reliability of the hypnotic examination and was therefore as equally objectionable as the proof first offered." Jones v. State, 542 P.2d 1316, 1328 (Ok.Cr.App. 1975).
The present case is one in which the Frye standard should apply.
The Frye test requires that before scientifically based evidence may be introduced, it must first be established that the scientific technique from which the evidence is derived has become generally acknowledged by the scientific community as reliable. Rivers v. Black, 259 Ala. 528, 68 So.2d 2 (1953). The scientific technique need not have attained widespread acceptance in all fields of science, but only in the particular branch to which it belongs. Frye, supra, at 1014.
Determining exactly when a scientific technique has become generally accepted in the scientific community is difficult to ascertain. In enunciating the Frye test, the rendering court itself remarked:
 "Just when a scientific principle or discovery crosses the line between the experimental and demonstratable stages is difficult to define. Somewhere in this twilight zone the evidentiary force of the principle must be recognized and, while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." Id. at 1014.
The Encyclopaedia Britannica, Macropaedia contains the following comments about hypnosis:
 "Hypnosis has not been found reliable in obtaining truth from a reluctant witness. Even if it were possible to induce hypnosis against one's will, it is well documented that the hypnotized individual can willfully lie. It is of even greater concern that cooperative hypnotized subjects remember distorted versions of actual events and are themselves deceived. When recalled in hypnosis, such false memories are accompanied by strong subjective conviction and outward signs of conviction that are most compelling to almost any observer." 9 Encyclopaedia Britannica, Macropaedia, 139 (1979).
Another commentator has observed that "suggestion is the name of the game in hypnosis, and without proper controls it may lead to deception of hypnotist and subject alike. The results are inherently unreliable." Margolin, Hypnosis EnhancedTestimony: Valid Evidence or Prosecutor's Tool?, 17 Trial 44, 46 (1981).
McCormick on Evidence also provides guidance as to whether hypnosis has gained sufficient recognition in the scientific community to warrant the admission of hypnotically based testimony. That treatise provides:
 "Declarations made under hypnosis have been treated judicially in a manner similar to drug induced statements. The hypnotized person is ultra suggestible and this manifestly endangers the reliability of his statements. The courts have recognized to some extent the usefulness of hypnosis as an investigative technique and in diagnosis and therapy. However, they have rejected . . . statements made under hypnosis when offered by the subject on his own behalf and opinions as to mental state based on hypnotic examinations." McCormick on Evidence, 510, n. 94 (2d ed. 1972). (Emphasis supplied.)
As the above passage from McCormick indicates, it is important to distinguish between the acceptance hypnosis has gained in the clinical and investigatory fields and its acceptance, or lack thereof, in the area of forensic science. While hypnosis is recognized in the scientific community as reliable in the exploration of mental and nervous disorders, it has not achieved general acceptance in the field of forensic science. *Page 1164 
See, Diamond, Inherent Problems in Use of Pre-trial Hypnosis ona Prospective Witness, 68 Cal.L.Rev. 313 (1980).
Based upon the authorities cited herein, we are convinced that, at this time, hypnosis has not attained sufficient acceptance in the field of forensic science to satisfy the reliability requirements of the Frye test. Consequently, we hold that opinion testimony concerning the mental state of the accused, which is based upon statements of the accused while in hypnosis is inadmissible as a matter of law.
We are aware that some jurisdictions have left the question of reliability of such evidence to be decided by the trier of fact. See, People v. Kelly, 17 Cal.3d 24, 130 Cal.Rptr. 144,549 P.2d 1240 (1976). One writer, commenting upon the reluctance of many jurisdictions to allow the question of hypnotic reliability to be resolved by the trier of fact, noted:
 "The foundation of this judicial hostility is the fear that the trier of fact will accord uncritical and absolute reliability to a scientific device without consideration of its flaws in ascertaining veracity. Jurors are continually called upon to evaluate credibility, based upon their common experience, but it is not within the jurors' common experience to assess the reliability of scientific practices or devices." Spector and Foster, Admissibility of Hypnotic Statements: Is the Law of Evidence Susceptible? 38 Ohio St.L.J. 567, 583 (1977).
We believe, therefore, not only that our conclusion is mandated by precedent, but also that it is the better rule.
 II
At the sentencing hearing, the trial judge ordered that the appellant be ineligible for parole or the supervised intensive restitution program until he first made restitution to the victim's family in the amount of $4,013.85. The appellant now argues that payment of restitution as a pre-condition to receiving parole or participation in supervised intensive restitution constitutes cruel and unusual punishment and, further, that it violates the equal protection guarantee of the Fourteenth Amendment. The appellant did not, however, raise this constitutional claim in the trial court. The record indicates that the sentencing judge expressly asked the appellant and his attorney whether they wished to question the deceased family's entitlement to restitution. The appellant's attorney replied, "We find that they are indeed reasonable figures and we do not make any protest at all." Even constitutional questions, when not raised in the trial court will not be considered on appeal. Steele v. State, 289 Ala. 186, 266 So.2d 746 (1972); Boyd v. State, 361 So.2d 1179
(Ala.Cr.App. 1977); Smoke v. State, 347 So.2d 564 (Ala.Cr.App. 1977); Harris v. State, 347 So.2d 1363 (Ala.Cr.App.), cert. denied, 347 So.2d 1368 (1977). Agreeing to the restitution requirements is common defense strategy at sentencing hearings.
 III
The appellant next contends that the trial court erred in allowing his written and oral confessions to be admitted into evidence. He maintains that he was unable to knowingly and voluntarily waive his constitutional right to remain silent, contending that he was intoxicated, and citing his youth.
Extrajudicial confessions are presumptively involuntary and thus inadmissible. Hardy v. State, 409 So.2d 996 (Ala.Cr.App. 1982). This presumption may be overcome by evidence that the confession was voluntarily given and that the accused was informed of his Miranda rights before making a statement.Thomas v. State, 393 So.2d 504 (Ala.Cr.App. 1981). The record here indicates that the appellant was informed of his Miranda
rights on two different occasions before he made a statement to the police. In determining the voluntariness of the statement given, the trial judge may consider all of the circumstances surrounding the giving of the statement. Boulden v. Holman,394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); *Page 1165 Wallace v. State, 290 Ala. 201, 275 So.2d 634 (1973). Whether a statement is voluntary depends upon the peculiar facts of each case. Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189,19 L.Ed.2d 35 (1967).
The age and education of the accused are factors to be considered in weighing voluntariness. Garrett v. State,369 So.2d 833 (Ala. 1979). Here the accused is an eighteen-year-old in his twelfth year of schooling.
"In order for intoxication to render a confession inadmissible it must amount to a `mania' which impairs the will and mind to the extent that the person confessing is unconscious of the meaning of his words. A lesser state of intoxication will not render a confession inadmissible."Campbell v. State, 444 So.2d 913, 915 (Ala.Cr.App. 1984);Miller v. State, 423 So.2d 271 (Ala.Cr.App. 1982).
"The determination of the voluntariness of the confession is within the sound discretion of the trial court." Green v.State, 439 So.2d 816, 818 (Ala.Cr.App. 1983). There was ample evidence to indicate that the appellant was not intoxicated to the point of mania at the time he gave his confession, and that he knew what he was doing. The trial judge did not abuse his discretion in receiving the statement into evidence.
 IV
The appellant argues that his conviction should be reversed because the verdict was not supported by substantial evidence, as he argued in his motion for new trial. Appellant insists that the evidence presented at trial failed to establish beyond a reasonable doubt that he possessed the intent to kill, as required by § 13A-6-2, Code of Alabama 1975. Essentially, the appellant's argument is that his intoxication negated the mental element of intent.
The law on this subject is well settled.
 "[M]ere drunkenness, voluntarily produced, is never a defense against a criminal charge unless it is so extreme as to render impossible some mental condition which is an essential element of the criminal act. The degree of intoxication necessary to negate the element of malice must be so excessive as to paralyze the mental faculties and render the appellant incapable of forming or entertaining the design to take life." Scott v. State, 333 So.2d 619
(Ala.Cr.App. 1976).
Whether the level of intoxication is sufficient to negate an essential element of the crime, such as intent, is a question of fact to be resolved by the jury. Sowells v. State,339 So.2d 1090 (Ala.Cr.App. 1976); Lee v. State, 439 So.2d 818
(Ala.Cr.App. 1983). The evidence presented by the prosecution was sufficient to submit the issue to the jury. The court's denial of the motion for new trial was not error.
The judgment of the circuit court is due to be affirmed.
AFFIRMED.
All the Judges concur.