Following convictions in Birmingham municipal court for driving while under the influence of alcohol and reckless driving, Steven Michael Vizzina appealed for trial de novo in circuit court and was found guilty of both offenses. He was fined $500 and $50, respectively, for the two offenses and sentenced to twenty days of community service for the DUI conviction. He raises three issues on appeal to this court.
 I
First he claims that there was no valid judgment entered against him in municipal court which would support an appeal to circuit court. While it is true that the copies of the U.T.T.C. filed by the City with the circuit court pursuant to §12-14-70(d), Code of Alabama 1975, did not contain "judgments," as that term is defined in Rule 1(a), A.R.Crim.P.Temp., or reflect the "pronouncement of judgment," requirement by Rule 8(a), A.R.Crim.P.Temp., the circuit court had jurisdiction to entertain his appeal.
The reverse side of the "Abstract of Court Record/DPS Data Input Copy" of the U.T.T.C. filed by the City contained no notation, for the DUI conviction, under the spaces labelled "Plea of Defendant," "Finding of the Court," or "Orders of the Court." In addition, the copies for both convictions were signed by the city magistrate rather than the municipal judge. Rule 1(a), A.R.Crim.P.Temp., defines "judgment" as "the adjudication of the court based upon a plea of guilty by the defendant, upon the verdict of the jury, or upon its own finding following a non-jury trial, of the defendant's guilt or innocence." Rule 8(a) requires the following: *Page 654 
 "Judgment shall be pronounced in open court, shall be reduced to writing signed by the judge, filed, and recorded. A judgment of conviction shall set forth the plea, the verdict, and findings, if any, and the adjudication. . . ."
Although the requirements of Rule 8(a) were not met by the copies of the U.T.T.C. filed by the City here, it is clear that "the recitals of the appeal bond suffice to show the trial and conviction of the defendant in the [municipal] court, and his appeal from a conviction to the circuit court, thereby giving to the latter court jurisdiction of the cause." Ex parte Hood,404 So.2d 717, 719 (Ala. 1981) (quoting Ex parte McLosky,210 Ala. 458, 459, 98 So. 708, 709 (1923)). See also Chaney v. Cityof Birmingham, 246 Ala. 147, 151, 21 So.2d 263 (1944), opinion conformed to Chaney v. City of Birmingham, 32 Ala. App. 4,21 So.2d 268 (1944), cert. denied by Chaney v. City of Birmingham,246 Ala. 501, 21 So.2d 273 (1945); Howard v. City of Bessemer,40 Ala. App. 317, 320, 114 So.2d 158, cert. dismissed, 269 Ala. 474, 114 So.2d 164 (1959). In Bouyer v. City of Bessemer,17 Ala. App. 665, 88 So. 192 (1921), the appellant argued that because the judgment of the city court did not show for what offense he had been convicted, the circuit court had no jurisdiction over his appeal. The appeals court, however, observed that "while the judgment of [the city] court so set out in the record does not show for what offense he was convicted, the appeal bond executed by the defendant shows that it was for [the proper] offense." 17 Ala. App. at 666,88 So. at 193. Here the defendant's appeal bonds recited his convictions and sentences in the municipal court and were sufficient to confer jurisdiction over his appeals on the circuit court. "No defect in the proceedings, other than want of jurisdiction apparent on the face of them, will subject the cause to dismissal on appeal." Chaney v. City of Birmingham,246 Ala. at 151, 21 So.2d at 268.
 II
The defendant next maintains that the proper predicate for the introduction of the blood-alcohol test results was not established. In Ex parte Bush, 474 So.2d 168 (Ala. 1985), the Alabama Supreme Court reiterated that the following predicate must be laid for the admissibility of evidence of blood alcohol content, pursuant to § 32-5A-194(a)(1), Code of Alabama 1975:
 "This predicate may be established by showing, first, that the law enforcement agency has adopted the particular form of testing that was in fact used. Second, there must be a showing that the test was performed according to methods approved by the State Board of Health. This may be proved by the introduction of the rules and regulations the officer followed while administering the test and the officer's testimony that he did, in fact, follow those rules when he administered the test in question. Third, there must be a showing that the person administering the test has a valid permit issued by the State Board of Health for that purpose." 474 So.2d at 170 (citations omitted).
Here, the first and third prongs of the predicate were met by the prosecution. The defendant raises no question concerning their proof. He does claim that the second prong of the predicate was not established because the City did not introduce a duly authenticated copy of the rules and regulations adopted by the Board of Health. Officer J.E. Summers of the Birmingham Police Department testified that he followed a checklist contained on a document entitled "Rules and Regulations of the State Board of Health Relating to the Alabama Chemical Test for Intoxication Act." That document was admitted in evidence as City's exhibit 3. The document also contained the following "certification:"
 "I certify that the foregoing rules, regulations and procedures, techniques or methods of operation were duly adopted and promulgated by the State Board of Health on July 21, 1976; amended January 18, 1978; amended November 21, 1979; amended January 21, 1981; amended November 16, 1983; and further amended July 18, 1984.
"Ira L. Myers
Ira L. Myers, M.D. *Page 655 
State Health Officer and Records Custodian"
Citing Bentley v. State, 450 So.2d 197 (Ala.Cr.App. 1984), the defendant argues that the document was not properly authenticated because it contained the preprinted facsimile signature of Dr. Ira L. Myers, State Health Officer. InBentley, this court held that "[c]ertified copies of public records, signed and certified by the officer who has lawfulcustody, are properly authenticated and admissible into evidence." 450 So.2d at 199 (emphasis added). "A 'certified copy' of a public record is one that is signed and certified asa true copy by the officer who has lawful custody of the original." C. Gamble, McElroy's Alabama Evidence § 218.01 (3d ed. 1977) (emphasis added). "To certify means to attest authoritatively." Bates v. Bates, 247 Ala. 337, 340,24 So.2d 440, 442 (1946). "Attest" and "certify" are often used interchangeably, as indicated by the following definition of "attest" found in Black's Law Dictionary 163 (rev. 4th ed. 1968):
 "ATTEST. To bear witness to; to bear witness to a fact; to affirm to be true or genuine; . . . to certify; to certify to the verity of a copy of a public document; formally by signature; to make solemn declaration in words or writing to support a fact.
 . . . . . "Also the technical word by which, in the practice in many of the states, a certifying officer gives assurance of the genuineness and correctness of a copy."
Section 12-21-72, Code of Alabama 1975, provides that "[t]he certificate of the head of any bureau or department of the general government is sufficient authentication of any paper or document appertaining to his office." "A 'certificate' by a public officer is a statement written and signed, but not necessarily or customarily sworn to, which is by law made evidence of the truth of the facts stated for all or for certain purposes." Black's Law Dictionary 287 (rev. 4th ed. 1968) (emphasis added). Construing the predecessor to §12-21-72, the Supreme Court of Alabama has held that a document is properly authenticated if "certified under the seal of thedepartment by the acting commissioner." Woodstock Iron Co. v.Roberts, 87 Ala. 436, 6 So. 349, 349 (1889) (emphasis added).
Based on the foregoing authorities, it is evident that the printed matter at the bottom of the document admitted as City's Exhibit 3 could not be considered a proper "certificate" pursuant to § 12-21-72. In order to constitute a certificate, the writing must have been signed by Dr. Myers and certified, under seal of the Department of Health, as a true copy of the original Rules and Regulations of the Board.[1]
Prior opinions construing the requirement in DUI cases that the blood alcohol tests be performed according to methods approved by the Board of Health have mandated that it be shown that the regulations were "duly adopted" or "certified" by the Board of Health. See Patton v. City of Decatur, 337 So.2d 321,324, 325 (Ala. 1976) ("It would be a simple matter to proffer a duly certified and authenticated copy of methods or regulations duly adopted or approved by the State Board of Health.");Weaver v. City of Birmingham, 340 So.2d 99, 101 (Ala.Cr.App. 1976), overruled on other grounds by Estes v. State,358 So.2d 1050 (Ala.Cr.App. 1977), cert. denied, 358 So.2d 1057 (Ala. 1978) ("[N]owhere in the record is there [a] duly certified and authenticated copy of the methods or regulations duly adopted by the Alabama State Board of Health for the operation . . . of the photoelectric intoximeter. Patton v. City of Decatur, 1976, Ala., 337 So.2d 321, makes this an absolute requirement as part of the predicate to be laid. . . ."); Elmore v. State,348 So.2d 265 (Ala.Cr.App. 1976), affirmed *Page 656 as to instant issue, 348 So.2d 269 (Ala. 1977). Compare Estesv. State, 358 So.2d 1050, at 1056 (Ala.Cr.App.), cert. denied,358 So.2d 1057 (Ala. 1978) ("The state . . . introduced a duly certified and authenticated copy of the methods and regulations adopted and approved by the State Board of Health governing the performance of the test.").
Although City's Exhibit 3 in the present case did not comply with the requirements for a "certificate" and thus cannot be considered a duly authenticated copy of the Board of Health regulations, its admission did not constitute reversible error. While the convictions in Patton, Weaver, and Elmore were all reversed for the prosecution's failure to satisfy the second prong of the predicate for admitting the results of intoximeter tests, those cases are distinguishable from the present one.
In Ex parte Bush, the court held that the second prong of the predicate "may be proved by the introduction of the rules and regulations the officer followed while administering the testand the officer's testimony that he did, in fact, follow those rules when he administered the test in question."474 So.2d at 170 (emphasis added). The second prong of the Bush predicate, therefore, has two parts: (1) evidence of the rules themselves, and (2) evidence that the rules were followed. In the Patton,Weaver and Elmore prosecutions, there was no proof of the second part of the prong — evidence that the rules were followed.
In Patton, the officer who administered the PEI test never testified that in conducting the test he followed the methods approved by the Board of Health. Similarly, in Commander v.State, 374 So.2d 910 (Ala.Cr.App. 1978), cert. quashed,374 So.2d 921 (Ala. 1979), "there was no testimony or proof that the manner in which the test was conducted was performed according to methods approved by the state board of health."374 So.2d at 917 (emphasis in original).
In both Weaver and Elmore, the officers who conducted the PEI tests stated that they followed a "checklist" for operating the machine, but they did not testify that the checklist incorporated the methods approved by the Board of Health. Thus, the failure to introduce a duly authenticated copy of the "checklist" resulted in there being no evidence that the manner in which the test was administered conformed to prescribed standards.
Thus, even if a majority of the court had agreed, inElmore, with Justices Maddox and Beatty, or in Commander, with Justice Maddox and Chief Justice Torbert, dissenting, who maintained that the court could take judicial notice of the Board of Health regulations (thereby establishing the first part of the prong), there still would have been a failure of proof on the second part of the prong.
In contrast, here Officer Summers testified that he followed a checklist whose methods of operation conformed to Board of Health standards.
 "Q. [By City Attorney] Do you follow a checklist before giving the test?
"A. [By Officer Summers] Yes, sir.
 "Q. Is this the same method and operations pursuant to the rules and regulations of the Alabama Department of Health relating to the Alabama Chemical Test and Intoxication Act?
"A. Yes, it is.
 (City's Exhibit 3 was marked for identification.)
 "Q. I show you City's Exhibit No. 3, would you mark that, please — I show you City's Exhibit No. 3 which is the Intoxilyzer test, it has 2 sides of it, you conducted the test on the defendant pursuant to the rules and regulations which are set forth on that instrument? "A. Yes, I did."
Because the second part of the second prong of the Bush predicate was clearly established in the instant case, (as opposed to the situation in Patton, Weaver, Elmore andCommander), we believe that the dissenting opinions expressed in Elmore and Commander now have merit so that a court may take judicial notice of the Board of Health regulations as proof of the first part of the second prong. See Cherry v. State,491 So.2d 1003 (Ala. 1986), on remand, *Page 657 491 So.2d 1006 (Ala.Cr.App. 1986), cert. denied, 479 U.S. 861,107 S.Ct. 210, 93 L.Ed.2d 139 (1986) (signature of public official on document he or she is required to sign in official capacity can be judicially noticed, even without designation of title).
As Justice Maddox observed in his dissenting opinion in bothElmore and Commander, "It is well settled that courts in Alabama take judicial notice of administrative rules and regulations when the rules and regulations are declared by statute to have the force and effect of law." Elmore,348 So.2d at 272, and authorities cited therein; Commander,374 So.2d at 922, and authorities cited at n. 1. Section 22-2-2(6), Code of Alabama 1975, states that the rules and regulations adopted by the State Board of Health have the force and effect of law, and this court has, in fact, taken judicial notice of Board of Health regulations in other cases. See e.g. Bentley v. State,450 So.2d 197, 199 (Ala.Cr.App. 1984) (designation of a substance as a controlled substance).
Courts in other jurisdictions construing statutes substantially similar to § 32-5A-194(a)(1), have held that judicial notice may be taken of Board of Health administrative regulations pertaining to blood alcohol tests. See, e.g. Statev. Zaragoza, 21 Ariz. App. 596, 522 P.2d 552 (1974); State v.Berch, 222 N.W.2d 741 (Iowa 1974); State v. Crowell,560 S.W.2d 889 (Mo.App. 1978); City of Cincinnati v. Duhart,41 Ohio App.2d 127, 322 N.E.2d 897 (1974);City of Olympia v. Sprout, 5 Wn. App. 897, 492 P.2d 586
(1971). See generally Annot., 96 A.L.R.3d 745 (1979).
We therefore hold that Officer Summers's testimony that he followed the procedure outlined by the Board of Health in conducting the Intoxilyzer test, together with our judicial notice of the pertinent Board of Health regulations, established the second prong of the Bush predicate notwithstanding the failure to authenticate the Board of Health regulations by a proper certification.[2]
 III
Finally, the defendant argues that the admission of a police log pertaining to the Intoxilizer 5000 was error. At trial, defense counsel objected to the log on the ground that "It is hearsay, it is just a police record, it is not a business record and it is not used for any business and the proper predicate has not been laid and he is not custodian, it is just a thing that they leave over there for every police officer to write on."
 "Record books of PEI tests are generally admissible into evidence under the business records exception to the hearsay rule to show the machine had been properly calibrated and certified and was operating properly at the time the test was given. However, Alabama Code 1975, § 12-21-43, requires that a proper predicate be laid before such records are admitted." Ex parte Bush, 474 So.2d at 171 (Ala. 1985) (citations omitted). See also Gibson v. City of Troy, 481 So.2d 463, 465
(Ala.Cr.App. 1985).
In Salotti v. Seaboard Coast Line Railroad Co., 293 Ala. 1,20, 299 So.2d 695, 712 (1974), the court set out the predicate which must be established in order to comply with the business records exception to the hearsay rule. The statute requires:
 "(1) that it be shown that the entry was made as a memorandum or record of an act, transaction, occurrence, or event; (2) that the entry was made in the regular course of a business; and (3) that it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence, *Page 658 
or event, or within a reasonable time thereafter."
In the present case, the testimony of Officer Summers established that the information on the log sheets was routinely reduced to writing after it was obtained, that he was a custodian of the logs, and that the log sheets "were business records kept in the due course as such." The defense counsel's objection on grounds of no proper predicate was, therefore, properly overruled. Although the log sheet contained information pertinent to other DUI arrestees and was irrelevant to the prosecution of the instant offense, there was no objection based on irrelevance. Counsel's later objection toanother log sheet based on irrelevance was sustained.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Alternatively, the City could have authenticated the document by introducing a copy certified by the secretary of the Board of Health pursuant to § 41-22-6, Code of Alabama 1975, seeChildress v. City of Huntsville, 459 So.2d 1008, 1010
(Ala.Cr.App. 1984), or by producing an "examined or sworn copy," of the original. "The term 'examined or sworn copy' of a public record means a copy which a witness testifies was correctly copied by him from, or was compared by him with, the original and found to be a correct copy of the original." C. Gamble, McElroy's Alabama Evidence § 218.01 (3d ed. 1977).
[2] It appears that a substantially similar exhibit was admitted in Brown v. City of Montgomery, 504 So.2d 748 (1987), and approved by this court as "certified." While we now disapprove of the language in Brown that the reverse side of an "Operational Procedure" card purporting to be "certified by state board of health officer and records custodian Ira L. Myers," was a proper authentication of the document, the result in Brown is correct. The testing officer stated that he "followed the rules and regulations of the Alabama Department of Public Health in conducting the G.C.I. test,"504 So.2d at 749, and the City introduced the Operational Procedure card the officer followed. Thus, the first part of the second Bush prong could have been established by judicial notice and the second part was proved by the officer's testimony.