Herman Pate was indicted for the offense of vehicular homicide, in violation of § 32-5A-190, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment," and he was sentenced to five years' imprisonment in the penitentiary.
At approximately 6:00-6:30 on the evening of May 21, 1984, James Hunn was working on the roof of his barn which is located approximately one-half block from the intersection of U.S. 90 and Range Line Road in Mobile County, Alabama. At that time, Hunn saw a tractor-trailer truck come over the rise on Range Line Road. The truck was going between 45 and 55 miles per hour and never slowed down. The truck hit several vehicles which were stopped at the intersection of U.S. 90 and Range Line Road.
Hunn went to the scene of the accident. He saw the appellant get out of the tractor-trailer *Page 139 
truck. The appellant smelled of alcohol.
Bobby Gibson testified that the victim, Darrell Pierce, was a passenger in his van on the night in question. The two were on their way home from work and had stopped for the red light at the intersection of U.S. 90 and Range Line Road in Mobile County. At some point, the van was hit from behind by the tractor-trailer truck. The impact caused the van to hit a pick-up truck and a car which were also stopped at the intersection.
After the impact, Gibson found the victim lying on the pavement between the van and the tractor-trailer truck. The victim was bleeding and was unresponsive. He was transported to the emergency room at Knollwood Park Hospital.
Dr. David Warren attended the victim at the hospital. The victim was comatose when he arrived at the hospital with multiple injuries. The victim died at 11:00 p.m. Dr. Leroy Riddick, a state medical examiner and coroner for Mobile County, performed the autopsy on the victim. The cause of death was determined to be blunt force injuries to the head and chest, which were sustained in an automobile accident.
Immediately after the accident, the appellant got out of the tractor-trailer truck and told Gibson that "he [the appellant] was going to lose his license for sure this time." (R. 20)
Mark Scarborough was standing near the intersection on the night in question. He saw the tractor-trailer truck coming down a hill towards the intersection. The truck's brakes began smoking and it hit and went over the top of the van.
Joseph Sewell, a state trooper, went to the scene of the accident. When he arrived, he talked to the drivers of the four vehicles involved in the accident. The appellant told Sewell that he was tired from driving and had dozed off. He smelled of alcohol.
James William Hamilton, a traffic homicide investigator for the Department of Public Safety, went to the scene of the accident. Hamilton found skid marks which extended 127 feet from the rear of the tractor-trailer truck. Hamilton testified that a cooler was removed from the cab of the tractor-trailer truck. Inside were two soft drink bottles, one vegetable drink, and a bottle of beer.
The appellant was taken to the State Trooper's Office and was administered a breath test by Trooper Hamilton. The result of the test was .09. The appellant made a statement after being advised of his Miranda rights. His statement is as follows:
 "The statement's dated the 21st of May, 1984. Statement of Herman Lee Page taken at 9:00 P.M. at the Alabama State Troopers' office. Taken by Corporal J. W. Hamilton. 'Question: You are Herman Lee Pate?' Answer: 'Yes.' Question: You understand your rights as I have explained?' Answer: 'Yes.' Question: 'You understand you have been involved in an accident in which a party was critically injured?' Answer: 'Yes.' Question: 'Where were you going?' Answer: 'Empire, Louisiana.' Question: 'What time did you leave Florida?' Answer: 'At approximately 12:30 P.M. Eastern Daylight Saving Time.' Question: What stops did you make?' Answer: 'One stop, Appalachicola, Florida. Bought three beers.' Question: 'When did you drink them?' Answer: One in Appalachicola, one when I got on I-10 in Pensacola.' Question: 'Did you drink anything else in the last 24 hours?' Answer: 'No.' Question: 'Are you taking any drugs, medicine or otherwise?' Answer: 'No.' Question: 'What happened in the accident?' Answer: 'I was getting drowsy, so I got off to get something to eat at the Pizza Hut.' Question: 'What happened then?' Answer: 'I must have dozed off for a second. Traffic was stopping for a red light. I put on my brakes, but could not stop.' Question: 'What vehicle did you hit first?' Answer: 'I don't remember if it was the truck or the van.' Question: 'Was there anything wrong with your truck, any defects?' Answer: 'Not that I know of. Brakes were okay.' Question: 'How fast were you going?' Answer: 'I could not have *Page 140 
been going fast. We had slowed down for the other intersection behind us.' Question: 'You understand your rights and give this statement of your own free will without any threats or promises?' Answer: 'Yes.' Question: 'This statement is true to the best of your knowledge? Answer: Yes. The statement was concluded at 9:10 P.M. on the 21st of May, 1984.' Signed by Herman L. Pate, witnessed by Trooper Joe Sewell and Alabama Public Service Commission Officer Warren Clements." (R. 76-77)
The appellant's testimony at trial was basically the same as his statement.
 I
The appellant contends the results of the Photoelectric Intoximeter test should have been excluded because the State failed to lay the proper predicate for the admission of these results into evidence.
 "In Ex parte Bush, 474 So.2d 168 (Ala. 1985), this Court addressed the issue of what elements were necessary to lay the proper predicate for admissibility of the P.E.I. test results. There we said:
 " 'This predicate may be established by showing, first, that the law enforcement agency has adopted the particular form of testing that was in fact used. Alabama Code 1975, § 32-5A-192(a) [sic, § 32-5-192(a)]. See Estes v. State, 358 So.2d 1050 (Ala.Cr.App.), cert. denied, 358 So.2d 1057 (Ala. 1978). Second, there must be a showing that the test was performed according to methods approved by the State Board of Health. Alabama Code 1975, § 32-5A-194(a)(1). See Commander v. State, 374 So.2d 910
(Ala.Cr.App. 1978). This may be proved by the introduction of the rules and regulations the officer followed while administering the test and the officer's testimony that he did, in fact, follow those rules when he administered the test in question. Parker v. State, 397 So.2d 199
(Ala.Cr.App. 1981). Patton v. City of Decatur, 337 So.2d 321 (Ala. 1976). Third, there must be a showing that the person administering the test has a valid permit issued by the State Board of Health for that purpose. Alabama Code 1975, § 32-5A-194(a)(1).' "
Ex parte Reed, 492 So.2d 293, 294 (Ala. 1986).
The first element, as delineated above, was established by Trooper Hamilton's testimony that the photoelectric intoximeter has been approved for use by the Alabama Department of Public Safety. (R. 55, 72) The third element was satisfied by Hamilton's testimony that he was certified by the State Board of Health to administer photoelectric intoximeter tests. (R. 58, 70)
It is the second element which the appellant asserts was not established in the case at bar.
Hamilton testified that he followed the entire procedure outlined on the operating record card (which was introduced into evidence). (R. 56-58, 71-73) The appellant contends this was insufficient to meet the requirements of the second element due to the fact that Hamilton failed to place a check mark next to step 18 and could not "independently recollect" having done step 18 on this particular test.
We cannot accept this argument. First of all, it would be absurd to expect any law enforcement officer to "independently recollect" having performed one particular step, during one particular test upon a person, when that officer regularly administers numerous tests during the course of his duties. Secondly, the fact that Hamilton did not place a check mark beside step 18 does not necessarily indicate he did not perform the test according to the approved procedures of the State Board of Health. This is particularly true where, as here, Hamilton testified that he is sure he performed step 18 because he wrote in the final reading in step 18. Thus, Hamilton's testimony, that he performed the test according to the rulesand regulations of the State Board of Health, was sufficient to establish the second element set out under the Bush predicate.
The State laid a proper predicate for the admission of the results of the photoelectric intoximeter test. The results of the test were properly admitted into evidence. *Page 141 
 II
During the course of the trial, Matthew Tolbert Barnhill, Jr. testified as an expert in forensic toxicology and was asked the following hypothetical question by the State:
 "Q Dr. Barnhill, let me give you a hypothetical, if I may. Assume the following facts, Doctor: One, that a wreck occurs approximately 6:30 P.M. At 8:05 P.M. the Defendant is tested on a Photoelectric Intoximeter and there is a reading of .09 or .095. Further assume, if you will, Doctor, that the Defendant or the subject tested on this machine had nothing to drink alcoholic from 6:30 to 8:05 P.M. when the test was run. Also assume that the Defendant is approximately six foot tall and weighs approximately 160, 165 pounds. Further assume that the Defendant had been drinking beer, 12 ounce bottles, five percent alcohol. Based on these facts, Doctor, could you formulate an opinion as to how many beers the Defendant would have had to consume to obtain a reading of .09 or .095?" (R. 90)
Defense counsel objected to the hypothetical question on the basis that it assumed facts not in evidence, specifically, the appellant's height, weight, and the alcoholic content of the beer. The appellant now raises this issue on appeal.
 "[O]pinion testimony, offered by an expert witness, may be based upon facts within his knowledge, or he may give an opinion based upon a hypothetical question, based upon facts already in evidence, or evidence to be subsequently admitted. C. Gamble, McElroy's Alabama Evidence, § 130.01 (3rd Ed. 1977), and cases cited therein."
Thomas v. State, 455 So.2d 278, 281 (Ala.Cr.App. 1984).
 "The frame and substance of hypothetical questions to expert witnesses is a matter largely committed to the sound discretion of the trial court. Osborn v. Brown, Ala., 361 So.2d 82 (1978). And, an objection to his testimony on the ground of inadequacy of facts goes to the weight of the evidence rather than its admissibility. Dyer v. Traeger, Ala., 357 So.2d 328 (1978)."
M.C. West, Inc. v. Batlaglia, 386 So.2d 443, 448
(Ala.Civ.App. 1980).
Prior to the time Barnhill was asked the above-quoted hypothetical question, Trooper Hamilton testified that the appellant's weight was "approximately 160, 165 pounds," his height was "approximately six feet" and the alcoholic content of the beer was five percent to his knowledge. (R. 77-78) The appellant did not object to Hamilton's testimony concerning these matters.
"When asking a hypothetical question, the party examining the expert should assume that the facts already introduced into evidence are true. . . ." McElroy's, supra, at 130.01.
Thus, we find that the trial court did not err by allowing Barnhill to answer the hypothetical question as propounded by the State.
 III
The appellant contends the trial court erred by failing to give his written requested jury charges # 5, 7, and 8. The substance of these charges was fully covered by the trial court in its oral charge to the jury. (See R. 124-131) Thus, there is no basis of error to reversal here. Rule 14, Alabama Temp.R.Crim.P.; § 12-16-13, Code of Alabama 1975.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 142